FILED

2018 MAR 29 PM 12: 44

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

CASE NO. 6:18-cv-476-ORL-41-KRS

| | |
|---|---|
| CARNELL SMITH, on behalf of himself and all others similarly situated, | CLASS ACTION COMPLAINT |
| Plaintiff, | JURY TRIAL DEMANDED |
| vs. | |
| FIFTH THIRD BANK, Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Carnell Smith ("Plaintiff"), on behalf of himself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and a class of all similarly situated consumers against Defendant Fifth Third Bank ("Defendant" or "Bank"), arising from 1) its unfair and unconscionable assessment of *two* out-of-network ATM fees ("OON Fees") on out of network ATM withdrawals preceded by a balance inquiry; and 2) its assessment of a 3% "foreign transaction fee" ("FTF") on amounts greater than the "transaction" amount and for which no FTF should apply—specifically, on the third-party ATM owner fee for use of a foreign ATM.

2. Such fees -- which are not disclosed to consumers at any point during the ATM transactions and violate the agreement governing the contractual relationship between Defendant and its customers -- constitute a breach of contract and a breach of the covenant of fair dealing with

thousands of consumers and serves to enrich Defendant to the tune of millions of dollars at the expense of consumers.

3. Defendant's ATM Fee revenue has increased dramatically in recent years and is one of the primary drivers of Bank fee income. The subject of this litigation are those fees assessed on transactions entered on "out-of-network" ATMs, i.e. ATMs not owned or operated by Defendant or a partner of Defendant's. Defendant assesses OON Fees on its account-holders who withdraw funds from ATMs not owned by Defendant. Defendant also assesses International OON Fees, plus an international transaction fee of 3% of the transaction amount. The subject of this litigation also concerns the FTF assessed irrespective of whether the ATM is out-of-network.

4. When Defendant account-holders use a non-Defendant ATM, the fees add up very quickly—to their surprise. Not only does the non-bank ATM operator charge the consumer a fee for use of its ATM -- a charge which now averages $3 -- but Defendant imposes a OON Fee as well—a punishing double-fee on account-holders that can rise to a total six or seven dollars for a consumer to simply access his own money. Defendant never adequately informs consumers they will be charged two separate fees for each non-bank ATM withdrawal, never once tells consumers the total amount of that double-fee, and charges fees beyond what they are contractually permitted to impose.

5. Defendant does not stop there, however. On some out-of-network ATM withdrawals, Defendant account-holders pay a *third* fee for withdrawing funds at an out of network ATM—a fee to the ATM operator and *two* OON Fees to Defendant. Specifically, when Defendant account-holders check their account balance prior to withdrawing funds at an out of network ATM, Defendant charges two its account-holder two OON Fees—*one for the balance inquiry and one for the withdrawal.*

2

6. For a simple domestic out of network ATM withdrawal, for example, Plaintiff paid a total of $7.50 in fees, including $5.50 to Defendant.

7. Defendant's uniform practice of charging two OON Fees per cash withdrawal is unfair, violates representations in Defendant's account documents, and constitutes a breach of contract. Indeed, Defendant's account documents fail to provide notice of the so-called "balance inquiry fee" at all—much less the large triple-fee for an out of network ATM withdrawal.

8. Second, when an account-holder makes an ATM withdrawal in a foreign currency, Defendant assesses an international transaction fee ("ITF") of 3% of the amount of the transaction. But, in violation of the contract, Defendant assesses the 3% ITF on foreign ATM transactions even when they are undertaken in U.S. Dollars. Additionally, and also in violation of the contract, Defendant assesses the 3% ITF on both the transaction amount *and* the ATM usage fee assessed by the foreign ATM owner. As an example, if an account holder withdraws $200 in US Dollars from a foreign ATM, and the ATM owner charges a $5 fee for use of the ATM, the Defendant account-holder will also be charged a 3% ITF on the withdrawal amount by Defendant, and he will *also* be charged a 3% on the additional ATM usage fee by Defendant; he will be charged 3% of $205.00 rather than 3% of $200.00. In other words, Defendant charges a fee on a fee—even though Defendant's own systems recognize the transaction amount as separate from the ATM usage fee charged by the ATM terminal owner.

9. By definition, the ATM usage fee is not part of the "transaction amount" and should not be subject to the 3% ITF. To continue the aforementioned hypothetical, the consumer is not "transacting" in the amount of $205.00; rather, he is being charged a $5.00 for the ability to make a transaction in the amount of $200.00.

10. Plaintiff, and other Defendant customers, have been injured by Defendant's improper practices to the tune of millions of dollars bilked from their accounts in clear violation of

3

their agreements with Defendant. On behalf of himself and the class, Plaintiff seeks damages, restitution and injunctive relief for Defendant's breach of contract and of the covenant of good faith and fair dealing.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## PARTIES

13. Plaintiff is a citizen of Florida and a resident of Seminole County, Florida.

14. Defendant is a national bank with its headquarters and principal place of business located in Cincinnati, OH. Among other things, Defendant is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. Defendant operates banking centers, and thus conducts business, throughout the State of Florida, including within the Middle District and in Seminole County.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

I. **FIFTH THIRD CHARGES TWO OON FEES PER WITHDRAWAL**

   A. **Mechanics of Domestic Out of Network ATM Withdrawals**

4

15. When consumers use ATMs not owned by their own bank, federal law requires the owners of those out of network ATMs to inform users of the amount of the usage fees charged by the ATM owner.

16. Thus, it is standard at ATMs in the United States that when a consumer uses an ATM not owned by his home bank, a message is displayed on the screen stating that usage of the ATM will cost a specified amount to proceed with a withdrawal of funds, and that such a fee is in addition to a fee that may be assessed by a consumer's financial institution for use of the ATM.

17. That message appears only after a user has decided to perform a cash withdrawal and entered the amount of cash he or she would like to withdraw.

18. Through repeated exposure to such fee warning messages, consumers are accustomed to being warned of fee assessments at out of network ATMs - and to being provided with the opportunity to decide whether the fees charged are reasonable - before proceeding with their cash withdrawal.

19. Defendants knows this—that consumers expect a fair fee disclosure at the ATM—and has designed a scheme to assess OON Fees on balance inquiries and exploit consumers' reasonable expectation that they will be provided an opportunity to cancel actions before being assessed a fee. That scheme involves assessing fees for the mere act of checking a balance before proceeding with a cash withdrawal.

20. In the US, most ATM display screens immediately ask consumers if they would like to "check their account balance" before proceeding with their transaction.

21. The ATM screen does not disclose that a balance inquiry alone will incur a usage fee, and indeed ATM owners in the United States in general do not charge usage fees for balance inquiries.

22. Repeated exposure to such messages is partly responsible for building the reasonable consumer understanding that a balance inquiry is a common lead-in to a withdrawal; it is, in other words, a mere first step to the real business at hand, an informational exercise offered by the ATM to help inform the cash withdrawal.

23. Reasonable consumers like Plaintiff do not, in sum, understand a balance inquiry to be an independent transaction worthy of a separate fee.

24. Defendant knows this——that consumers expect a balance inquiry to be an included part of a cash withdrawal—and has designed a scheme to assess OON Fees on those balance inquiries. The Bank preys on the common assumption and understanding that a balance inquiry preceded by a cash withdrawal is not an independent basis for a fee.

25. Thus, in most circumstances, there is simply no warning at the ATM that a balance inquiry alone could incur a fee.

26. As a result, consumers have zero expectation that their home bank will charge a separate fee for a balance inquiry, especially one that precedes a cash withdrawal at the same ATM.

27. If a bank is going to charge such a conscience-shocking fee, it must fully and fairly disclose such a fee in its account documentation. Defendant did the opposite—providing express and implied indications in their contract that balance inquires would not incur OON Fees.

**B. Defendant's Account Contract**

28. Plaintiff has a Fifth Third Bank checking account, which is governed by Defendant's standardized account agreement.

29. Defendant issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, and ATM withdrawals at both Defendant and non-Defendant ATMs.

6

30. Against the backdrop of the reasonable consumer expectations and federal law above, Defendant's contractual disclosures deceive consumers and reinforce the reasonable understanding that no fee will be assessed for a balance inquiry—especially if ATM users are not warned beforehand.

31. Defendant's disclosures also reinforce the common-sense presumption that there can be no balance inquiry fee when such an inquiry is in conjunction with a cash withdrawal at the same ATM.

32. Pursuant to Defendant's standard account agreement in effect at the time of the relevant transactions:

> **Electronic Fund Transfer:**
>
> Fees: We reserve the right to impose a fee and to change fees upon notice to you. A fee may be imposed by an automated teller machine (ATM), and by any network used to complete the transaction, when you initiate an electronic fund transfer or make a balance inquiry.
>
> [...]
>
> **Fifth Third and Partner Networks ATM Fee $0**—No charge to use Fifth Third ATMs or partner network ATMs[1]
>
> Non-Fifth Third ATM Fee $2.75 for U.S. transactions $5 for international transactions
>
> Other ATM network owners may also assess a usage fee.

Deposit Account Rules and Regulations, attached as Ex. A.

33. In short, Defendant states that 1) it may impose "a [singular] fee"; 2) the ATM or the network owning or operating the ATM may charge fees; and, most importantly 3) Defendant imposes a *single* $2.75 OON Fee on "transactions" (or $5.00 for foreign transactions).

---

[1] "Fifth Third Bank is a part of the Allpoint®, Presto!, and 7-Eleven® network of ATMs, which features more than 43,000 fee-free ATMs nationwide. Customers of Fifth Third Bank can withdraw cash fee-free from any domestic Allpoint® ATM in addition to Presto! ATMs located in Publix stores, and 7-Eleven® ATMs listed on our ATM locator on 53.com or on our Mobile Banking app. ATM fees may apply to certain 7-Eleven® locations in Oklahoma, Hawaii, and Alaska. Any 7-Eleven® location listed on our ATM locator is fee-free."

7

34. The Debit Card Agreement and Card Disclosure (affixed hereto as Ex. B) similarly states:

"ATM Mini Statement Fee $1.50

International POS/ATM Transaction Fee 3% of the transaction amount

Currency Conversion Fee 0.20% of the transaction amount

International ATM Withdrawal $5.00

Non-Fifth Third ATM Transaction $2.75 per transaction

[…]

ATM TRANSACTION CHARGES. Your Account or may be subject to charges when using an ATM that does not display the Fifth Third logo. Also, when you use an ATM not owned by us, you may be charged a fee by the ATM operator or any network used (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer)."

35. When a cash withdrawal is made at same time as a balance inquiry at an out of network ATM, Defendant's account documents indicate to reasonable consumers that those functions count as a single "transaction" triggering a single OON Fee assessment of $2.75.

36. Defendant and its customers, including Plaintiff, contractually (and uniformly) agree that should the customer, including Plaintiff, make a balance inquiry and a cash withdrawal, the customer, including Plaintiff, will pay a fee of no more than $2.75.

37. A balance inquiry, whether standing alone or in conjunction with a cash withdrawal, is not reasonably understood as a "transaction" as that term is used in the Deposit Agreement.

38. Merriam-Webster defines "transaction" to mean "something transacted; *especially*: an exchange or transfer of goods, services, or funds." There is no exchange or transfer involved in a balance inquiry; a balance inquiry is merely a precursor to the actual "transaction"—the cash withdrawal.

39. Moreover, accountholders using a non-Defendant ATM are never warned that they will receive two separate fees from Defendant—plus another one from the ATM owner—when they check their balance before proceeding with a cash withdrawal at the same ATM. Yet that is exactly what happens.

40. As discussed *supra*, ATMs immediately prompt consumers to check their balance, and never warn that such a balance inquiry will be the basis for a fee, either from the ATM owner or from the consumer's own bank. Defendant's disclosures do nothing to disabuse consumers of the reasonable understanding that a balance inquiry will not incur a separate fee when it precedes a cash withdrawal at the same ATM, and never state outright that such a fee will be assessed even when conducted absent a subsequent cash withdrawal. Again, the Fee Schedule says nothing more than "$2.75 per transaction."

41. Moreover, reasonable consumers like Plaintiff do not understand—and are never warned—that a mere balance inquiry (in which no funds are transferred in any way) counts on its own as a separate "transaction" that could be the basis for an independent OON Fee.

42. Further, Defendant's disclosure that the <u>ATM owner</u> may charge a fee for a balance inquiry "even if you do not complete a fund transfer" is problematic for several reasons.

43. First, as is the case here, owners generally do not charge such fees (and therefore do not disclose such fees). There can thus be no reasonable expectation that Defendant will do so.

44. Second, even if ATM owners did charge such fees, the "even if you do not complete a fund transfer" phrase indicates that a consumer will **not** be charged a separate OON Fee for a balance inquiry if he **does** complete a fund transfer (and therefore does pay an OON Fee for that cash withdrawal)—especially where, as here, the ATM owner does not charge separate fees for balance inquiries and never provides an on-screen warning that either it or the consumer's bank will do so.

9

45. The reasonable consumer understanding that a balance inquiry is not itself an independent transaction or basis for a fee is the very reason the "even if you do not complete a fund transfer" is necessary. *Indeed, the warning would be nonsensical if it was generally understood that the balance inquiry was an independent transaction worthy of a fee.*

46. In other words, if the balance inquiry and the transaction (withdrawal) were not linked and intrinsic to each other in the minds of reasonable consumers—there would be no need to disclose the special case of when they are de-linked.

47. Defendant and its customers, including Plaintiff, contractually agree that should the customer, including Plaintiff, make a balance inquiry, Defendant will not impose any fee on such balance inquiry.

48. Defendant's specific warning to its customers that the third-party ATM operator may assess a fee on the balance inquiry even if no cash withdrawal is subsequently made is important for another reason in that, as to their own practice, Defendant never asserts the same. Defendant clearly understands the importance of clarifying that third-party ATM operators may charge a standalone fee on balance inquiries, and yet declines to specifically inform customers that Defendant's uniform practice is to do likewise. More egregious still is that Defendant certainly never informs customers that not only do they assess a fee on balance inquiries even in the absence of cash withdrawals, but that where a customer conducts a balance inquiry *and* a cash withdrawal, Defendant will assess a fee on *both* actions.

49. At the very least, by the repeated use of "may," Defendant provides itself discretion as to when it will assess OON Fees, and it uses that discretion in bad faith when it assesses an OON Fee on both a balance inquiry and a cash withdrawal at the same ATM.

10

### C. Plaintiff's Domestic Out of Network ATM Withdrawals

50. On March 3, 2017, Plaintiff withdrew $200 in cash from an out of network ATM in Lake Mary, Florida. Prior to withdrawing the cash, Plaintiff was prompted to check his balance, and he did so. The ATM owner charged Plaintiff $2 for the cash withdrawal but did not charge a fee for the balance inquiry. Defendant, however, charged Plaintiff two OON Fees of $2.75 each—one for the withdrawal and one for the "balance inquiry."

51. The same pattern occurred on a January 29, 2018 out of network ATM withdrawal.

52. Upon information and belief, the balance inquiry fee was assessed by Defendant for usage of an out of network ATM, not by the ATM owner.

53. A balance inquiry is not a "transaction," pursuant to the governing contract, and that is especially true when a balance inquiry was accompanied by a cash withdrawal.

54. Defendant's contract does not disclose that a $2.75 balance inquiry fee will be charged by anyone, much less by Defendant itself, when a balance inquiry precedes a cash withdrawal at the same out of network ATM.

55. Defendant's contract does not disclose that Defendant imposes a fee on balance inquiries at all.

56. Indeed, the only time "balance inquiry fee" appears in Defendant's Fee Schedule or account documents is to inform customers that a *third-party* may assess such a fee, not that Defendant itself uniformly assesses such a fee.

57. Plaintiff was shocked to discover later that he was charged two OON Fees by Defendant for his withdrawal, in addition to the ATM owner's fee for the cash withdrawal, especially because he was not warned that the balance inquiry would incur any fee at all.

58. Plaintiff would not have used the out of network ATMs if he had known he would be charged two OON Fees by Defendant and would not have chosen to bank with Defendant if its

11

abusive triple-fee scheme had been disclosed. Nor would Plaintiff have proceeded with the balance inquiry and/or cash withdrawal if he had known Defendant would impose a fee merely for checking his balance.

## II. FIFTH THIRD ASSESSES 3% INTERNATIONAL TRANSACTION FEES ON U.S. DOLLAR WITHDRAWALS IN FOREIGN COUNTRIES AND CHARGES INTERNATIONAL TRANSACTION FEES ON ATM USAGE FEES

59. First, when an account-holder makes an ATM withdrawal in a *foreign* currency, Defendant assesses an international transaction fee ("ITF") of 3% of the amount of the transaction. But, in violation of the contract, Defendant also assesses the 3% ITF even on transactions undertaken in U.S. Dollars.

60. Second, when an account-holder makes an ATM withdrawal at a machine located in a foreign country, the foreign ATM owner may assess a usage fee. When it does, Defendant improperly charges its 3% ITF on both the transaction amount *and* the ATM fee assessed by the foreign ATM owner. As an example, if an account holder withdraws $200 from a foreign ATM and is charged a $5.00 usage fee by the third-party ATM owner, the account-holder will be charged a 3% ITF on the withdrawal amount, and he will *also* be charged a 3% on the additional ATM usage fee. In other words, Defendant charges a fee on a fee—even though Defendant's own systems recognize the transaction amount as separate from the ATM usage fee charged by the ATM terminal owner.

61. Both practices violate the contract.

62. Defendant's Debit Card Agreement states as follows:

> Fee Schedule
> ATM Mini Statement Fee $1.50
> International POS/ATM Transaction Fee **3% of the transaction amount**
> Currency Conversion Fee 0.20% of the transaction amount
> International ATM Withdrawal $5.00
>
> […]

> **FOREIGN CURRENCY TRANSACTIONS. We will assess an international transaction fee equal to 3% of the U.S. dollar amount of each foreign transaction.** The international transaction fee is in addition to the currency conversion fee assessed by Mastercard®. If a transaction is made in a foreign currency, Mastercard will convert the transaction into a U.S. dollar amount and assess a currency conversion fee equal to .20% of the transaction total. Mastercard will act in accordance with its operating regulations or conversion procedures in effect at the time the transaction is processed. Currently, Mastercard regulations and procedures provide that the currency conversion rate is either (1) a wholesale market rate or (2) a government-mandated rate in effect one day prior to the processing date. The currency conversion rate calculated in this manner that is in effect on the processing date may differ from the rate in effect on the transaction date or the posting date.

(emphases added).

63. First, the section "FOREIGN CURRENCY TRANSACTIONS" makes clear that the 3% ITF is only assessed on withdrawals made in a foreign currency.

64. But, Defendant assesses the ITF even on all foreign ATM withdrawals, even when those transactions are undertaken in US Dollars.

65. On July 1, 2016, Plaintiff withdrew $200 in US Dollars from an ATM in Jamaica.

66. In violation of the contract, Defendant assessed a 3% ITF on the $200 US currency withdrawal, in a total amount of $6.09.

67. Second, Defendant also assesses the 3% ITF on the ATM usage fee charged by the foreign ATM owner, even though by definition the ATM usage fee is not part of the "transaction amount" and should not be subject to the 3% ITF.

68. With respect to Plaintiff's July 2016 withdrawal in Jamaica, the ATM owner assessed a $5 usage fee. The total ITF assessed by Defendant amounted to $6.09 because Defendant assessed the 3% ITF on the usage fee in addition to the transaction amount.

69. Defendant later reimbursed Plaintiff for the $5 ATM usage fee—as clear an indication as any that Defendant's own systems recognize the transaction amount as separate from

13

the ATM usage fee charged by the ATM terminal owner. Notably, Defendant did not reimburse Plaintiff for the portion of the ITF attributable to the $5 ATM usage fee.

70. Defendant also assessed the ITF on ATM usage fees on withdrawals that Plaintiff undertook in the Dominican Republic on November 3 and 6, 2017.

## CLASS ALLEGATIONS

71. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

72. The proposed classes are defined as:

> All Defendant checking account holders in the United States who within the applicable statute of limitations were assessed an OON Fee for a balance inquiry at an out of network ATM (the "National Balance Inquiry Class").

> All Defendant checking account holders in Florida who within the applicable statute of limitations were assessed an OON Fee for a balance inquiry at an out of network ATM (the "Florida Balance Inquiry Sub-Class").

> All Defendant checking account holders in the United States who within the applicable statute of limitation were assessed two OON Fees for a cash withdrawal preceded by a balance inquiry at an out of network ATM (the "National Double Fee Class").

> All Defendant checking account holders in Florida who within the applicable statute of limitation were assessed two OON Fees for a cash withdrawal preceded by a balance inquiry at an out of network ATM (the "Florida Double Fee Sub-Class").

> All Defendant checking account holders in the United States who within the applicable statute of limitation were assessed an ITF on a transaction undertaken in US Dollars (the "National US Currency ITF Class").

> All Defendant checking account holders in Florida who within the applicable statute of limitation were assessed an ITF on a transaction undertaken in US Dollars (the "Florida US Currency ITF Sub-Class").

14

> All Defendant checking account holders in the United States who within the applicable statute of limitation were assessed an ITF on an ATM usage fee (the "National Usage Fee ITF Class").
>
> All Defendant checking account holders in Florida who within the applicable statute of limitation were assessed an ITF on an ATM usage fee (the "Florida Usage Fee ITF Sub-Class").

The National Classes and the Florida Subclasses are collectively referred to as the "Classes." The Florida Subclasses are collectively referred to as the "Florida Subclasses."

73. Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

74. Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

75. The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Defendant's records.

76. The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was charged multiple OON Fees for the same ATM usage, were charged balance inquiry fees at all, and was charged improper ITF fees. Furthermore, the factual basis of Defendant's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

77. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

78. Among the questions of law and fact common to the Classes are whether Defendant:

    a. Charged multiple OON Fees on the same ATM transaction;
    b. Charged balance inquiry OON fees;
    c. Breached its contract with consumers by charging multiple OON Fees on the same transaction;
    d. Breached its contract by imposing balance inquiry fees;
    e. Charged ITF Fees on transactions conducted in US currency;
    f. Breached its contract with consumers by charging ITF Fees on transactions conducted in US currency;
    g. Charged ITF Fees on amounts exceeding the "transaction" amount;
    h. Breached its contract with consumers by charging ITF Fees on ATM operator service fees;
    i. Breached the covenant of good faith and fair dealing;
    j. Violated the UCL;
    k. Whether Plaintiff and the Class were damaged by Defendant's conduct and if so, the proper measure of damages.

79. Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful policies and practices related to Defendant's Account Agreement with consumers. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

80. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

81. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could reasonably afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy.

82. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
### Breach of Contract
### (On Behalf of the Classes)

83. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

84. Plaintiff and Defendant have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Defendant's Account Agreement and related documentation.

85. No contract provision authorizes Defendant to charge OON Fees for a balance inquiry.

86. No contract provision authorizes Defendant to charge two OON Fees for a cash withdrawal preceded by a balance inquiry at the same out of network ATM.

87. In addition, no contract provision authorizes Defendant to charge ITFs on transactions undertaken in US Dollars or on ATM usage fees.

88. Finally, no contract provision authorizes Defendant to charge ITFs on ATM usage fees.

89. On the contrary, Defendant and the members of the class contracted for terms that include only that Defendant is permitted to impose a $2.75 fee on OON transactions such as cash

17

withdrawals, that Defendant is permitted to impose a $5.00 fee on OON transactions such as cash withdrawals, and that Defendant is permitted to impose a fee of 3% of the transaction amount where the withdrawal is conducted in a foreign currency.

90. Therefore, Defendant, by imposing fees beyond those it was contractually permitted to impose, breached the terms of its Account Agreement.

91. Plaintiff and members of the class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

92. Plaintiff and members of the Class have sustained damages because of Defendant's breach of the Account Agreement.

## SECOND CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of the Classes)

93. Plaintiff incorporates by reference paragraphs 1-82 and 84-92.

94. Plaintiff and Defendant have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Defendant's Account Agreement and related documentation.

95. Under the laws of every state where Defendant does business, good faith is an element of every contract. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

96. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

97. Defendant has breached the covenant of good faith and fair dealing in the Account Agreement through its OON Fee and ITF policies and practices as alleged herein.

98. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

99. Plaintiff and members of the Class have sustained damages because of Defendant's breach of the covenant of good faith and fair dealing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

a. Declaring Defendant's OON Fee and ITF Fee policies and practices to be wrongful, unfair and a breach of contract;

b. Restitution of all relevant OON Fees and ITF Fees paid to Defendant by Plaintiff and the Classes due to the wrongs alleged herein in an amount to be determined at trial;

c. Disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

d. Actual damages in an amount according to proof;

e. Statutory, punitive and exemplary damages, as permitted by law;

f. Pre-judgment interest at the maximum rate permitted by applicable law;

g. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

  h.  Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: March 29, 2018        Respectfully submitted,


                /s/ Ed Normand
                Edmund A. Normand
                Florida Bar No.865590
                /s/ Jake Phillips
                Jacob Phillips
                Florida Bar No.120130
                Normand PLLC
                62 W. Colonial Drive
                Suite 209
                Orlando, FL 32801
                Telephone: (407) 603-6031
                Facsimile: (888) 974-2175
                ed@ednormand.com
                jacob@ednormand.com
                service@ednormand.com
                office@ednormand.com


                Attorneys for Plaintiff and the Putative Class