UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CARNELL SMITH, *on behalf of himself and all others similarly situated* | : : : | Case Nos. 1:18-cv-464 1:18-cv-722 |
| LENOX MAGEE, *on behalf of himself and all others similarly situated* | : : : | |
| Plaintiffs, | : : | Judge Timothy S. Black Magistrate Judge Stephanie K. Bowman |
| vs. | : : | |
| FIFTH THIRD BANK | : : | |
| Defendant. | : | |

DECISION AND ENTRY
ADOPTING THE REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE (Doc. 83)

This case is before the Court pursuant to the Order of General Reference to United States Magistrate Judge Stephanie K. Bowman. Pursuant to such reference, the Magistrate Judge reviewed the pleadings filed with this Court and, on April 18, 2019, submitted a Report and Recommendation recommending that the Court grant in part and deny in part Defendant Fifth Third Bank ("Fifth Third")'s motion to dismiss Plaintiff Carnell Smith's amended complaint (Doc. 55) and motion to dismiss Plaintiff Lenox Magee's complaint (Doc. 70). (Doc. 83). More specifically, the Magistrate Judge recommended denying both motions to dismiss with respect to Plaintiffs' claims that Fifth Third improperly charged fees for "balance inquiries" made using out-of-network ATMs. (*Id.*). Fifth Third filed objections to that portion of the Report and

Recommendation (Doc. 87), to which Plaintiffs filed a joint response (Doc. 97) as well as a notice of supplemental authority (Doc. 98).

I. Background

This action consists of two consolidated lawsuits; one filed by Plaintiff Carnell Smith and another filed by Plaintiff Lenox Magee. (*See* Doc. 64). Both cases were filed as putative class actions, and both assert breach of contract claims alleging that Defendant Fifth Third improperly charged a $2.75 fee for balance inquiries at out-of-network ATMs. (Docs. 1, 52). Plaintiffs attached to their pleadings Fifth Third's Deposit Account Rules and Regulations, as well as Fifth Third's Debit Card Disclosure and Card Agreement, which together constitute the "Agreement" between Plaintiffs and Defendant. (*See* Docs. 52-1, 52-2).[1] In their respective complaints, Plaintiffs argue that a balance inquiry is not a "transaction" subject to the "transactions" fees noticed in the Agreement. Plaintiffs alternatively argue that a balance inquiry made in conjunction with a withdrawal of funds should be viewed as a single transaction, with a single $2.75 fee assessed.

The Agreement contains the following general language regarding fees that may be imposed in relation to the use of an ATM:

> **Fees:** We reserve the right to impose a fee and to charge fees upon notice to you. A fee may be imposed by an automated teller machine (ATM), and by any network used to complete

---

[1] Plaintiff Magee specifically claims that he made balance inquiries *without an accompanying withdrawal of funds* at out-of-network ATMs, but was nevertheless charged the $2.75 fee. (*See* Doc. 83 at 3).

2

>the transaction, when you initiate an electronic fund transfer
>or make a balance inquiry.

(Doc. 52-1 at 23). Elsewhere in the Agreement is an accountholder's agreement "to pay all fees we charge in connection with the Electronic Banking services you obtain." (Doc. 52-2 at ¶ 8). The term "Electronic Banking" is defined in the Agreement as "services that allow you to access the Account using ATMs . . . to make deposits, transfers or withdrawals to or from the Account." (*Id.* at 2). In addition, the Agreement includes a "fee schedule" listing a $2.75 fee "for U.S. transactions" and noting that "[o]ther ATM network owners may also assess a usage fee." (Doc. 52-1 at 28). A "2.75 [fee] per transaction" for any "Non-Fifth Third ATM transaction[s]" is similarly noted in the Debit Card Disclosure Agreement. (Doc. 52-2 at ¶ 8).

Defendant Fifth Third filed two motions to dismiss aimed at each of the Plaintiff's complaints. (Docs. 55, 70). The Magistrate Judge issued a Report and Recommendation recommending that the Court grant in part and deny in part Defendants' motions to dismiss, finding that the Court should deny the motions with respect to Plaintiffs' claims asserting breach of contract for improperly charging a $2.75 "transaction" fee for balance inquiries. (Doc. 83 at 27). In doing so, the Magistrate Judge found that in reviewing the Agreement as a whole, the term "transaction" is "at least" ambiguous as to whether the term encompasses balance inquiries. (*Id.* at 7-14). Defendant filed objections to this portion of the Report and Recommendation (Doc. 87), which the Court will address in turn.

II. Defendant's objections

First, Defendant states generally that the Magistrate Judge did not "fully consider" certain provisions contained in the Agreement that "identif[y] a balance inquiry as a separate transaction from a funds transfer." (Doc. 87 at 5 n.6). Defendant specifically refers to certain provisions in the Agreement governing fees that may be imposed by third parties (not Fifth Third), which expressly mention potential fees associated with balance inquiries.

One such provision that Defendant notes is the statement from the Rules and Regulations that:

> Fifth Third "reserve[s] the right to impose a fee and to charge fees upon notice to you. A fee may be imposed **by an automated teller machine (ATM), and by any network used to complete the transaction**, when you initiate an electronic fund transfer **or make a balance inquiry**."

(Doc. 52-1 at 20) (emphasis added). Defendant also points to the following language from the Debit Card Agreement: "when you use an ATM not owned by us, you may be charged a fee by the ATM operator or any network used (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer)." (Doc. 52-2 at ¶ 19).

Defendant concedes that these references to balance inquiries refer to fees charged by ATM operators and other networks (not Fifth Third), but argues that the Magistrate Judge should have found that balance inquiries are generally treated as separate transactions under the Agreement, because courts should examine the contract as a whole. (Doc. 87 at 5, 5 n.6).

This first objection is not well-taken. Rather than identify an error in the Magistrate Judge's reasoning, Defendant merely registers its disagreement with that reasoning. The Report and Recommendation properly recognizes that "courts should examine the contract as a whole" and "look to the plain and ordinary meaning of the language used in the contract." (Doc. 83 at 7). In examining the portions of the Agreement excerpted above, the Magistrate Judge reasoned that because the portions of the agreement dealing with third-party fees discuss balance inquiries as independent transactions that may incur fees, but the sections regarding Fifth Third's own fees do not expressly mention fees for balance inquiries, "a plausible construction of the language is that [the Agreement] warns Fifth Third customers that they may be charged for a balance inquiry by an ATM operator *even though a balance inquiry is not a traditional 'transaction'* in the way that an 'electronic fund transfer' falls within that definition." (*Id.* at 11). Thus, the Magistrate Judge applied basic principles of contract interpretation to reject Defendant's argument that the third-party fee language warrants a general understanding under the Agreement that a balance inquiry is an independent type of transaction to which fees may attach.

Second, Defendant objects to the Magistrate Judge's finding that "a consumer might reasonably equate the three terms: electronic banking services, electronic funds transfer, and *transaction*." (Doc. 87 at 6-7) (emphasis added). The Agreement states that customers agree to pay fees "in connection with *Electronic Banking services*." (Doc. 52-2 at ¶ 8) (emphasis added). The Agreement defines "electronic banking" as "services that

allow you to access the Account using ATMs . . . to make deposits, transfers or withdrawals . . . ." (*Id.* at 2). The Magistrate Judge reasoned that because customers agree to pay fees for "electronic banking services," which is limited by definition to accessing one's account to "made deposits, transfers or withdrawals," and because "transaction" is not defined, a customer may reasonably have the impression that the term "transaction" is similarly limited to deposits, transfers, or withdrawals. (Doc. 83 at 8).

Defendant disagrees, arguing that because "electronic banking" is defined as services that allow account access to engage in certain transactions (i.e. deposits, transfers, or withdrawals), this leads to the conclusion that by agreeing to pay fees associated with "electronic banking services," a customer is agreeing to pay fees for any number of "transactions" he engages in after accessing his account, including making a balance inquiry. (*Id.* at 7). Even assuming that the list of transactions a customer may engage in after accessing his account through electronic banking (i.e. making deposits, transfers, or withdrawals) is non-exhaustive, Defendant does not explain its logical leap that such "transactions" would necessarily include balance inquiries. Thus, Defendant's criticism does not refute the core of the Magistrate Judge's finding that the definition of electronic banking—as services allowing account access "to make deposits, transfers or withdrawals"— may inform a customer's understanding of the undefined term "transaction."

Third, Defendant objects to the Magistrate Judge's citation to the Electronic Funds Transfer Act as irrelevant. (Doc. 87 at 7-8). However, this argument is not persuasive, as Judge Bowman's reliance on the Act was not essential to the Judge's ultimate finding that the term "transaction" in the Agreement is ambiguous. (Doc. 83 at 11 n.11-12; Doc. 87 at 7-8). Moreover, the Magistrate Judge expressly acknowledged that the Court's analysis was limited to the four corners of the Agreement and referred to the Act in recognition of the highly regulated industry at issue—providing context for the court's analysis. (Doc. 83 at 11 n.11).

Fourth, Defendant puts forth several definitions of "transaction" from Black's Law Dictionary and Merriam-Webster's Dictionary that are more favorable to its interpretation than the definitions noted in the Report and Recommendation. (Doc. 87 at 8-9). However, the Court agrees with Plaintiffs' position that these multiple, differing definitions support rather than contradict the Magistrate Judge's finding of ambiguity with respect to the term "transaction." (*See* Doc. 97 at 8-9).

III. Conclusion

As required by 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), the Court has reviewed the comprehensive findings of the Magistrate Judge and considered *de novo* all of the filings in this matter. Upon consideration of the forgoing, the Court does determine that the Report and Recommendation (Doc. 83) should be and is hereby **ADOPTED** in its entirety.

Accordingly, for the reasons stated above:

7

1) Fifth Third's motion to dismiss Plaintiff Smith's amended complaint (Doc. 55) and motion to dismiss Plaintiff Magee's complaint (Doc. 70) are **GRANTED in part** and **DENIED in part** as follows:

   a. Fifth Third's motions (Docs. 55, 70) are **GRANTED** with respect to Plaintiff Smith's international transaction claims and Plaintiff Magee's ICFA and unjust enrichment claims; those claims are dismissed without prejudice;

   b. Fifth Third's motions (Docs. 55, 70) are **DENIED** with respect to both Plaintiffs' "balance inquiry" claims; those claims shall proceed.

**IT IS SO ORDERED.**

Date: 8/28/2019                                            */s/ Timothy S. Black*
                                                           Timothy S. Black
                                                           United States District Judge