**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **CARNELL SMITH**, on behalf of himself and others similarly situated, | Case No.: 1:18-cv-00464 |
| Plaintiffs, | Judge Douglas R. Cole<br>Magistrate Judge Stephanie K. Bowman |
| vs. | |
| **FIFTH THIRD BANK**, | |
| Defendant. | |
| **LENOX MAGEE,** | |
| Plaintiff, | Case No.: 1:18-cv-00464 |
| **vs.** | |
| **FIFTH THIRD BANK,** | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT AND ORDER SCHEDULING FAIRNESS HEARING**

Plaintiffs Carnell Smith and Lenox Magee respectfully move this Court pursuant to Fed. R. Civ. P. 23(e) for an Order:

1.      Adopting the following Rule 23 Settlement Class definition[1] agreed to by the parties:

All Current Account Holders and Former Account Holders of Fifth Third Bank who were assessed one or more Non-Fifth Third ATM Fees during the Class Period for making a balance inquiry at an ATM outside of Fifth Third Bank's network of ATMs or were assessed more than one Non-Fifth

---

[1] The capitalized terms in this Motion have the same meaning as those defined in the Settlement Agreement attached as *Exhibit A* to the Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement.

Third ATM Fee for undertaking a balance inquiry during the same ATM visit as a cash withdrawal or other funds transfer. Excluded from the Settlement Class is Fifth Third Bank, its parents, subsidiaries, affiliates, current officers and directors; all customers who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members;

2.      Conditionally certifying the Rule 23(b)(3) Settlement Class for purposes of Settlement and appointing Plaintiffs as Class Representatives and Class Counsel;

3.      Preliminarily approving the Settlement Agreement dated February 1, 2021, attached as *Exhibit A* to Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Memorandum"), for the purpose of providing notice thereof;

4.      Setting a Final Approval Hearing date to determine the fairness, reasonableness, and adequacy of the Settlement Agreement, and to consider Class Counsel's application for attorneys' fees and costs and for Service Awards to the Class Representatives; and

5.      Approving the Notice Program and directing that notice be provided to the Settlement Class members using the forms contained in *Exhibits C and D* to the Memorandum to advise them of a description of the Settlement's material terms; a date by which Settlement Class members may exclude themselves from, or "opt-out" of, the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the scheduled Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information.

6.      For the Court's convenience, a proposed Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement is attached to the supporting Memorandum filed herewith as *Exhibit E.*

Dated: February 3, 2021

Respectfully Submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
KOPELOWITZ OSTROW
FERGUSION WEISELBERG GILBERT
One W. Las Olas Blvd.
Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954)525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

Hassan A. Zavareei (pro hac vice)
Andrea R. Gold (pro hac vice)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington DC, 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com

Stuart E. Scott (OH-0064834)
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone: 216-696-3232
Facsimile: 216-696-3924
sscott@spanglaw.com

Jeffrey D. Kaliel (pro hac vice)
Sophia G. Gold (pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW
10th Floor
Washington, DC 20009
(202) 350-7483
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Robb S. Stokar, Esq. (OH-0091330)
MINNILLO LAW GROUP CO., LPA
2712 Observatory Avenue
Cincinnati, OH 45208
Telephone: 513-723-1600 x20
Facsimile: 513-723-1620
rss@mlg-lpa.com

*Attorneys for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFIY that on this 3rd day of February 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

*/s/ Jeff Ostrow*
Jeff Ostrow (pro hac vice)

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **CARNELL SMITH**, on behalf of himself and others similarly situated, | Case No.: 1:18-cv-00464 |
| Plaintiffs, | Judge Douglas R. Cole<br>Magistrate Judge Stephanie K. Bowman |
| vs. | |
| **FIFTH THIRD BANK**, | |
| Defendant. | |
| **LENOX MAGEE**, on behalf of himself and others similarly situated, | |
| Plaintiffs, | Case No.: 1:18-cv-00464 |
| **vs.** | |
| **FIFTH THIRD BANK**, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION

Plaintiffs Carnell Smith and Lenox Magee, on behalf of themselves and a proposed class of current and former customers of Defendant Fifth Third Bank ("Fifth Third"), respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. The Settlement[1]—which was the result of hard-fought, arms' length negotiations between experienced counsel and facilitated by mediator, Michael Ungar, Esq., of Ulmer & Berne, LLP in Cincinnati—provides substantial monetary relief for the benefit of the Settlement Class.

The Settlement includes Fifth Third's agreement to pay $5,200,000.00 into a common fund for the benefit of the Settlement Class. Further, as a result of the Action, Fifth Third modified its Account disclosures to better inform its customers that they could be charged a fee for a balance inquiry at an ATM outside of Fifth Third's network of ATMs. These modifications may also result in significant prospective financial savings to Settlement Class Members.

One of the hallmark components of the Settlement is that Settlement Class Members will not have to file claim forms to receive the Settlement's benefits, and with a limited exception no portion of the Settlement Fund will revert to Fifth Third. As explained below, the Settlement terms are well within the range of reasonableness and are consistent with applicable law. The Settlement satisfies all Sixth Circuit criteria for Preliminary Approval.

Accordingly, Plaintiffs respectfully requests that this Court enter an order that will: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes only the proposed Settlement Class, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (3) appoint Plaintiffs as Class Representatives; (4) approve the Notice Program set forth in the Agreement and approve the form and content of the notices; (5) approve and order the opt-out and objection procedures set forth

---

[1] The capitalized terms in this Memorandum have the same meaning as those defined in the Settlement Agreement, attached hereto as ***Exhibit A***.

in the Agreement; (6) stay all deadlines in the Action against Fifth Third pending Final Approval of the Settlement; (7) appoint as Class Counsel the law firms and attorneys identified herein; and (8) schedule a Final Approval Hearing.

## II.    PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS

This putative class action addresses Fifth Third's assessment of certain ATM fees.  In addition to a $2 or $3 fee that may be assessed by an out of network ATM owner, Fifth Third charges some Account Holders a Non-Fifth Third ATM Fee each time they withdraw funds at an ATM outside Fifth Third's ATM network, which was either $2 or $2.75 during the relevant time. Plaintiffs do not challenge either of those two fees. Rather, this Action concerns Fifth Third's practice of assessing Non-Fifth Third ATM Fees for balance inquiries made at ATMs outside of Fifth Third Bank's network of ATMs and for assessing multiple Non-Fifth Third ATM Fees if a balance inquiry was undertaken during the same ATM visit as a cash withdrawal or other funds transfer. By charging a fee for a balance inquiry, Plaintiffs allege Fifth Third breached the Account Agreement with its customers.

On March 29, 2018, Plaintiff Carnell Smith filed his Complaint against Fifth Third in the United States District Court for the Middle District of Florida ("*Smith*") Dkt. 1. On June 8, 2018, Fifth Third moved to dismiss Plaintiff Smith's Complaint. Dkt. 22. Concurrently with the motion to dismiss, Fifth Third filed a Motion to Transfer the *Smith* action to the Southern District of Ohio, which was unopposed. Dkt. 23.

On July 9, 2018, *Smith* was transferred to the Southern District of Ohio. Dkt. 30, 31. On August 10, 2018, the presiding district judge, Judge Black, referred *Smith* to Magistrate Judge Bowman for disposition of all pretrial and post-judgment motions, including through a report and recommendation on any dispositive matters. Dkt. 45.

On September 10, 2018, Mr. Smith filed his First Amended Complaint alleging putative class claims against Fifth Third for breach of contract and breach of the covenant of good faith and fair

dealing arising from Fifth Third's practice of charging a Non-Fifth Third ATM Fee for balance inquiries made at ATMs outside Fifth Third's network of ATMs and for charging two Non-Fifth Third ATM Fees if a balance inquiry was undertaken during the same ATM visit as a cash withdrawal or other funds transfer, assessing an international transaction fee on foreign transactions made in U.S. Dollars, and Fifth Third's method of calculating the international transaction fee. The First Amended Complaint seeks, inter alia, monetary damages, interest, attorneys' fees, and costs. Dkt. 52.

On October 8, 2018, Fifth Third moved to dismiss *Smith*. Dkt. 55. A few days later, on October 15, 2018, Plaintiff Lenox Magee filed a similar putative class action against Fifth Third also arising from Fifth Third's practice of assessing Non-Fifth Third ATM Fees for balance inquiries made at ATMs outside of Fifth Third's network of ATMs and for assessing multiple Non-Fifth Third ATM Fees if a balance inquiry was undertaken during the same ATM visit as a cash withdrawal or other funds transfer. The *Magee* Complaint alleges claims for breach of contract, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and for unjust enrichment, seeking, *inter alia*, entitlement to monetary damages, interest, attorneys' fees, and costs. As it pertains to the Non-Fifth Third ATM Fee, Plaintiffs both asserted that a balance inquiry is not a transaction subject to the Non-Fifth Third ATM Fee. S.D. Ohio No. 1:18cv722, Dkt. 1. The *Magee* Complaint alleged breach of contract, Illinois Consumer Fraud and Deceptive Business Practices Act, and unjust enrichment claims, seeking, *inter alia*, entitlement to monetary damages, interest, attorneys' fees, and costs. *Id.*

On October 8, 2018, Fifth Third moved to dismiss the *Smith* Complaint, Dkt. 55, and on October 29, 2018, Plaintiff Smith filed his Opposition to Fifth Third's Motion to Dismiss. Dkt. 62. On November 29, 2018, Fifth Third replied in support of its Motion to Dismiss in *Smith*. Dkt. 67.

Effective November 1, 2018, Fifth Third revised its Account disclosures to expressly provide that a balance inquiry is subject to a Non-Fifth Third ATM Fee if undertaken at an ATM outside of

Fifth Third's Network of ATMs. Joint Declaration of Class Counsel Jeffrey Kaliel, Robb S. Stokar, Jeff Ostrow, Andrea Gold, and Stuart Scott, attached hereto as **Exhibit B** ("Decl."), ¶46.

On November 15, 2018, *Magee* was consolidated with *Smith*. Dkt. 64.

On December 31, 2018, Fifth Third moved to dismiss the *Magee* Complaint, on January 22, 2019, Plaintiff Magee filed his Opposition, and on February 5, 2019, Fifth Third replied. Dkt. 70, 72, 73.

After briefing was completed, the Parties orally argued the two motions to dismiss to Judge Bowman on March 26, 2019. Dkt. 81. On April 18, 2019, Judge Bowman issued a Report and Recommendation granting in part and denying in part the motions to dismiss. Dkt. 83. More specifically, Judge Bowman recommended dismissal with respect to Plaintiff Smith's international transaction fee claims and Plaintiff Magee's ICFA and unjust enrichment claims. *Id.* Judge Bowman recommended denying both motions as to Plaintiffs' claims that Fifth Third improperly charged fees for balance inquiries made using out-of-network ATMs. *Id.* Fifth Third objected to that portion of the Report, and Plaintiffs Smith and Magee jointly responded, as well as filed a notice of supplemental authority. Dkt. 87, 97, 98. On August 28, 2019, Judge Black issued a Decision and Order adopting the Judge Bowman's Report and Recommendation in its entirety. Dkt. 103.

On June 19, 2019, the parties participated in a telephone conference with Magistrate Judge Bowman regarding a discovery schedule. On June 24, 2019, Plaintiffs served their first set of Requests for Production and first set of Interrogatories. Decl. ¶14. On August 7, 2019, the parties exchanged initial disclosures. *Id.* On August 23, 2019, Fifth Third responded to Plaintiffs' first set of Requests for Production and first set of Interrogatories. *Id.*.

In September, 2019, the parties conferred at length regarding discovery. *Id.* ¶15. During that same time period, the parties also met and conferred about settlement. *Id.*

Fifth Third produced substantial discovery in this Action, including account-level

transactional data from which Plaintiffs' expert estimated class-wide damages. *Id.* ¶16. The Parties appeared for numerous telephonic status conferences with Judge Bowman to aid the discovery process and advise her of the status of settlement negotiations during 2019 and 2020. *Id.* ¶17.

In October, 2019, the Parties agreed to a mediation before Michael Ungar, Esq. The initial mediation was scheduled for November 11, 2019. *Id.* ¶18. The Parties submitted detailed mediation statements in connection with that mediation. *Id.* At the mediator's request on November 10, 2019, mediation was rescheduled and occurred on December 3, 2019. *Id.* The Action did not settle that day. *Id.* The Parties continued good faith settlement discussions for several weeks but we unable to resolve the matter. *Id.*

The Parties continued to meet and confer regarding discovery, including but not limited to Fifth Third's ESI and non-ESI discovery productions and depositions, in February, March, and April of 2020. *Id.* ¶19. The Parties' counsel participated in numerous meet and confer telephone conferences and exchanged several meet and confer letters and emails. *Id.*

In mid-March of 2020, the Parties also began discussing the possibility of a second mediation session with Mr. Ungar, and ultimately scheduled one with him for July 23, 2020. *Id.* ¶20. The Parties also continued their meet and confer efforts regarding discovery throughout the summer of 2020. *Id.* The second mediation occurred on July 23, 2020, with Mr. Ungar with some of the participants attending in person and others virtually. *Id.* ¶21. Again, the parties engaged in good faith, hard-fought negotiations, but the Action did not settle that day. *Id.*

The Parties continued to meet and confer regarding discovery over the following weeks, including about completing document production and depositions. *Id.* ¶22. Further, they continued to engage in settlement negotiations via telephone and email. *Id.* On October 5, 2020, the Parties reached an agreement in principle to resolve the Action on a classwide basis. *Id.*

On October 6, 2020, the Parties filed a Joint Notice of Settlement and Motion to Stay All

Deadlines, which the Court granted on October 15, 2020. Dkt. 118. On November 20, 2020, January 4, 2021, and January 19, 2021, the Parties filed their Notices as to Timing of Filing Motion for Preliminary Approval to advise the Court that the Parties were still negotiating and preparing this Agreement. Dkt. 120, 122, 123.

The Parties continued to negotiate the terms of the Settlement from October 5, 2020, through February 1, 2021, when they signed the Agreement. Decl. ¶24. The Parties did not discuss attorneys' fees or any Service Award for the Class Representatives until after agreeing on the material terms of the Settlement. *Id.* ¶29.

## III.  SETTLEMENT TERMS

### A.  Settlement Class

The Settlement will resolve the claims of the Settlement Class, defined as:

> All Current Account Holders and Former Account Holders of Fifth Third Bank who were assessed one or more Non-Fifth Third ATM Fees during the Class Period for making a balance inquiry at an ATM outside of Fifth Third Bank's network of ATMs or were assessed more than one Non-Fifth Third ATM Fee for undertaking a balance inquiry during the same ATM visit as a cash withdrawal or other funds transfer. Excluded from the Settlement Class is Fifth Third Bank, its parents, subsidiaries, affiliates, current officers and directors; all customers who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members.

*See* Agreement ¶66.

The Class Period is January 1, 2010 through October 31, 2018. *Id.* ¶36. Non-Fifth Third ATM Fees mean the fees that Fifth Third assesses against Accounts for balance inquiries, withdrawals, deposits, or transfers undertaken at ATMs outside of Fifth Third's network of ATMs. *Id.* ¶49.

### B.  Settlement Benefits

The Settlement provides meaningful and immediate relief to Settlement Class Members in the form of direct cash payments. Fifth Third has agreed to establish a $5,200,000.00 cash Settlement Fund for the benefit of the Settlement Class. *Id.* ¶72. The Settlement Fund shall be used to pay

Settlement Class Member Payments, Settlement Administration Costs, any attorneys' fees, costs, and Service Awards that the Court may award, and any *cy pres* payment. *Id.*

Settlement Class Members do not need to submit a claim form in order to receive a Settlement Class Member Payment. The Settlement Fund will be distributed to Settlement Class Members according to the allocation and distribution plan set out in the Agreement. *Id.* ¶¶91-93. The amount of the Settlement Class Member Payment from the Settlement Fund to which each Settlement Class Member is entitled for the Class Period is to be determined using the following methodology or such other methodology as would have an equivalent result:

> a.    All Accounts held by Settlement Class Members will be identified for which Fifth Third assessed one or more Non-Fifth Third ATM Fees for balance inquiries undertaken at ATMs outside of Fifth Third's network of ATMs during the Class Period.

> b.    The Net Settlement Fund will then be divided by the total number of unique Accounts, which shall yield the amount of each Settlement Class Member Payment. For clarification, the Settlement Class Members for jointly held accounts will receive only one Settlement Class Member Payment per unique Account and each Settlement Class Member Payment will be the same, regardless of how many Non-Fifth Third ATM Fees were assessed against a unique Account for undertaking balance inquiries at ATMs outside of Fifth Third's network of ATMs.

*Id.* ¶93.

Settlement Class Member Payments to Current Account Holders at the time of distribution will be made by crediting each unique account or, if not feasible or reasonable to make a payment by a credit, by check. *Id.* ¶90.d.ii. Former Account Holders will receive their Settlement Class Member Payments by check. *Id.* For those Former Account Holders with joint accounts, checks will be payable to all Account Holders, and will be mailed to the first/primary Account Holder. *Id.* ¶90.d.iii. The

Settlement Administrator will make a reasonable effort to locate the proper address for any checks that are returned as undeliverable and re-mail it once to the updated address or, in the case of a jointly held account, and in the Settlement Administrator's discretion, to an accountholder other than the one listed first. *Id.* Checks will remain valid for 180 days. *Id.*

Within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, the Residual Funds from uncashed checks will be distributed as follows: The first $200,000.00 of Residual Funds will be payable to Fifth Third as reimbursement for a portion of the Settlement Administration Costs paid as part of the Settlement Fund. *Id.* ¶96. Second, in the event that there are still Residual Funds in the Settlement Fund Account, at the election of Class Counsel and Counsel for Fifth Third and subject to the approval of the Court, the funds may be distributed to Settlement Class Members via a secondary distribution. *Id.* If the costs of preparing, transmitting and administering such subsequent payments are not feasible and practical to make secondary distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair, Class Counsel and Fifth Third shall seek Court approval to distribute the Residual Funds to a *cy pres* recipient. *Id.* The Parties agree to seek Court approval of Jump$tart Coalition for Personal Financial Literacy (https://www.jumpstart.org/) as the *cy pres* recipient. *Id.* ¶92.

C.      **Settlement Administrator and Settlement Administration Costs**

The proposed Settlement Administrator is KCC Class Action Services, LLC, a nationally recognized and experienced class action administrator. Decl. ¶26. All Settlement Administration Costs will be payable from the Settlement Fund. Agreement ¶69. The estimated Settlement Administration Costs are $563,765.00. Decl. ¶26. In addition, Fifth Third has agreed to help minimize the costs of settlement notice and administration by (a) performing an extensive analysis of its historical transaction data in order to identify Settlement Class Members; and (b) automatically crediting settlement proceeds to Current Account Holders via direct deposit—thus obviating the need to print

and mail paper checks to these Settlement Class Members.

### D.    Proposed Notice Program

The Parties' proposed Notice Program is designed to reach as many Settlement Class members as possible and is the best notice practicable under the circumstances. Decl. ¶27. Fifth Third's account data will be used to determine the Settlement Class member list. Agreement ¶91. Fifth Third will bear the expense of extracting the necessary data and will then transmit the Settlement Class member list to the Settlement Administrator. *Id.* Within 30 days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall implement the Notice Program. *Id.* ¶79. Notice shall be provided through the following means: (1) Email Notice to Account Holders for whom Fifth Third has email addresses; (2) Postcard Notice to Account Holders for whom Fifth Third does not have email addresses or for whom the Settlement Administrator is unable to send Email Notice using the email address provided by Fifth Third; and (3) Long Form Notice, which will be available on the Settlement Website and which the Settlement Administrator will mail to Settlement Class members who request it. *Id.* ¶83. The Email Notice and Postcard Notice and the Long Form Notice shall be substantially in the forms attached hereto as ***Exhibits C and D***.

In addition, the Settlement Administrator will create and maintain a Settlement Website containing important information about the Settlement and case-related documents. *Id.* ¶¶70, 83. The Settlement Administrator will also establish a toll-free telephone line for Settlement Class members to call with Settlement-related inquiries and answer frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries. *Id.* ¶78.d.

All of the notices will include, among other information, a description of the Settlement's material terms; a date by which Settlement Class members may exclude themselves from, or "opt-out" of, the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the scheduled Final Approval Hearing date; and the Settlement Website address at which Settlement Class

members may access the Agreement and other related documents and information. *Id.* ¶79.

The Settlement Administrator will perform reasonable address traces for the initial Postcard Notice. *Id.* ¶84. The Settlement Administrator will re-mail Postcard Notices to Settlement Class members whose new addresses were identified by no later than 60 days before the Final Approval Hearing. *Id.* ¶85. The Settlement Administrator will also send the Postcard Notice to all Settlement Class members whose emails were returned as undeliverable. *Id.*

### E.       Release

As of the Effective Date of the Settlement, Plaintiffs and each Settlement Class Member will be deemed to have fully and irrevocably released and forever discharged the Released Parties from the Released Claims. *Id.* ¶97. Each Settlement Class Member is enjoined from bringing Released Claims against Fifth Third. *Id.* ¶98. The Releases include both known and unknown claims, and Plaintiffs and the Settlement Class Members also waive any rights they may have under Section 1542 of the California Code. *Id.* ¶¶97-101.

### F.       Opt-Outs and Objections

The notices will all inform Settlement Class members of their right to opt-out and deadline to do so. *Id.* ¶80. Settlement Class members may opt-out of the Settlement Class at any time during the Opt-Out Period. *Id.* The Opt-Out Period will begin the day after the earliest date on which notice is first mailed and end no later than 30 days before the Final Approval Hearing. *Id.* ¶52.

The Notices will also inform Settlement Class members of their right to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and/or Service Awards. *Id.* ¶81. Objections must be mailed to the Clerk of the Court, Class Counsel, Fifth Third's counsel, and the Settlement Administrator. *Id.* Objections must be submitted no later than the last day of the Opt-Out Period. *Id.* Objections must include: (a) the name of the Action; (b) the objector's full name, address, and telephone number; (c) all grounds for the objection, accompanied by legal support for

the objection known to the objector or the objector's counsel; (d) the number of times in which the objector has objected to a class action settlement within the preceding five years, the caption of each case, and copies of any orders related to or ruling upon those prior objections; (e) the identity of all counsel representing the objector, including current or former counsel who may be entitled to compensation for any reason related to the objection; (f) copies of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (g) any and all agreements relating to the objection or the process of objecting (whether written or oral) between the objector and the objector's counsel; (h) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (i) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (j) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (k) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶82.

### G.    Attorneys' Fees, Costs and Service Awards

Class Counsel have not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. Decl. ¶29. The Agreement provides that Class Counsel will apply for an award of attorneys' fees and costs. *See* Agreement ¶102. Fifth Third has agreed not to oppose a request for attorneys' fees up to 33.33% of the Settlement Fund and a request for reimbursement of reasonable litigation costs. *Id.* Such award will serve to compensate for the time, risk and expense Plaintiffs' counsel incurred pursuing claims on behalf of the Settlement Class. Decl. ¶29. However, if the Court does not approve an award of fees or costs, in whole or in part, that will not prevent the Settlement from becoming effective, nor shall it be grounds for termination. Agreement ¶102.

Class Counsel will also ask the Court to approve Service Awards of $5,000.00 for each of the

two Plaintiffs in recognition of their service as Class Representatives. *Id.* ¶105. Fifth Third does not oppose the requests. *Id.* However, if the Court does not approve the Service Awards, that will not prevent the Settlement from becoming effective nor shall it be grounds for termination. *Id.* The Service Awards will compensate the Class Representatives for their time and effort and for the risks they assumed in prosecuting the Action. Decl. ¶28.

## IV.     ARGUMENT

### A.     Legal Standard for Preliminary Approval

Courts have emphasized the "[t]he law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). Class settlement approval proceeds in three stages: (1) preliminary approval of the proposed settlement; (2) notice to the proposed settlement class members; and (3) a final approval hearing to determine whether the proposed settlement is fair, reasonable and adequate. *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d. 985, 1026 (S.D. Ohio 2001); *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

Courts grant preliminary approval "where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." Rubenstein, Newberg on Class Actions § 13:10 (5th ed. 2015) (citation omitted); *see also Bowling v. Pfizer*, 144 F. Supp. 3d 945, 952 (S.D. Ohio 2015) (noting that preliminary approval is warranted "if it is within the range of what ultimately could be considered fair, reasonable, and adequate…"); *Williams*, 720 F.2d at 921 (noting that the preliminary approval inquiry asks "whether the compromise . . . is illegal or tainted with collusion").

"[T]here are a multitude of factors that might enter into the Court's preliminary analysis of whether the terms of the proposed settlement agreement are fair, reasonable, adequate, and in the public interest." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 381 (N.D. Ohio 2001) (citation

omitted); *see also In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d. at 1009.[2] At this stage, however, the Settlement should be approved so long as "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval . . ." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1015-16 (quoting Manual for Complex Litig. § 30.44 (2d ed. 1985)).

> **B.** **This Settlement Satisfies the Criteria for Preliminary Approval.**

The relevant factors weigh in favor of Preliminary Approval here. First, the Settlement was reached with no collusion and is the product of good faith, informed and arm's length negotiations by competent counsel. Furthermore, a review of the fairness, adequacy and reasonableness factors demonstrates that the Settlement warrants Preliminary Approval.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe their claims have merit and they would prevail if the case proceeded to trial. However, Fifth Third argues that Plaintiffs' claims are unfounded, denies any potential liability and disputes Plaintiffs' ability to certify a class, and up to the point of settlement was willing to litigate those claims vigorously. Decl. ¶30. The Parties concluded the settlement benefits outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with further class certification discovery, a contested class certification motion, possible interlocutory review of the class certification ruling, completing merits discovery, pretrial motion practice, trial, and finally appellate review. *Id.*

---

[2] Courts consider "many of the same factors" that would be relevant at *final* approval, "though with somewhat less scrutiny." Rubenstein, Newberg on Class Actions § 13:15 (5th ed. 2015). Those factors are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 754 (6th Cir. 2013).

1. _This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations._

Procedural fairness examines the negotiating process leading to the settlement. *See Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("In evaluating a proposed settlement of a class action, the district court is required to examine the terms of the settlement and the process by which the settlement was arrived at, to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion."); Rubenstein, Newberg on Class Actions § 13:14 (5th ed. 2015) ("The primary procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length-noncollusive negotiations."). "[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 380; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 244 (S.D. Ohio 1991) (approving settlement reached "[a]fter almost six months of concerted negotiations"). That is true here. Experienced class action litigation attorneys with the relevant legal and factual issues represented the Parties and negotiated over several months with the assistance of a mediator. Decl. ¶31.

Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class actions cases. *Id.* ¶11. In negotiating this Settlement, Class Counsel had the benefit of years of experience and familiarity with the facts, as well as with other cases involving similar financial institution fee claims. *Id.* Furthermore, as detailed above, Class Counsel thoroughly investigated and analyzed Plaintiffs' claims and engaged in motion practice, discovery, extensive data analysis, and negotiation. *Id.* ¶23. Class Counsel's experience enabled counsel in accurately evaluating the strengths and weaknesses of Plaintiffs' claims and the value of the case. *Id.* ¶17.

2. _The Facts Support a Preliminary Determination That the Settlement Is Fair, Adequate and Reasonable._

A preliminary review of the Settlement supports Preliminary Approval under Rule 23(e)(2). The Sixth Circuit has identified seven factors to consider in determining the Settlement's fairness:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631. Courts consider "many of the same factors" that would be relevant at *final* approval, "though with somewhat less scrutiny." Rubenstein, Newberg on Class Actions § 13:15 (5th ed. 2015). They are considered a "useful guide" at the preliminary approval stage. The *UAW* factors remain applicable even after the 2018 amendment of Rule 23(e). *Doe v. Ohio*, No. 2:91-cv-00464, 2020 U.S. Dist. LEXIS 24826, at *11 (S.D. Ohio Feb. 12, 2020) (2018 amendment not intended to 'displace' the factors developed by the Circuit Courts) (citing Rule 23(e)(2) advisory committee's note)).

These factors must all be considered as a whole to determine whether a proposed settlement is fair, adequate, and reasonable. *Bowling*, 143 F.R.D. at 151; *Thompson v. Midwest Foundation Independent Physicians Assoc.*, 124 F.R.D. 154, 157 (S.D. Ohio Dec. 4, 1988) ("A class action settlement cannot be measured precisely against any particular set of factors, however, and the court may be guided by other factors, the relevancy of which will vary from case to case."). At the preliminary approval stage, only certain of the Sixth Circuit's factors are relevant to the fairness inquiry. *Hainey v. Parrott*, 617 F. Supp. 2d. 668, 673 (S.D. Ohio 2007); *see also Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 U.S. Dist. LEXIS 85551, at *15-*17 (N.D. Ohio Nov. 7, 2007) (at preliminary approval, analyzing the strength of plaintiffs' case, the risk, expense, complexity, and likely duration of litigation, the amount offered in settlement, and the experience and views of counsel).

a. <u>The settlement falls within the range of reasonableness and provides substantial benefits to the class, in light of the likelihood of success on the merits.</u>

Courts recognize that settlements by their inherent nature often result in class members receiving less than the full potential value of their claims. *See Williams*, 720 F.2d at 922-23 ("Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class."); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543,

550 (S.D. Ohio 2000) ("[T]he Court may not withhold approval simply because the benefits accrued from the agreement are not what a successful plaintiff would have received in a fully litigated case." (internal quotation marks and alterations omitted)). This case settled for 33% of the most likely recoverable damages. Decl. ¶25. Final approval of a class settlement under the same theory of liability was recently granted for the same 33% class recovery. *See Figueroa v. Capital One, N.A.*, No. 18cv692 JM(BGS), 2021 U.S. Dist. LEXIS 11962 (S.D. Ca. Jan. 21, 2021). This percentage is also well within the range of reasonableness for other bank fees cases including within the Sixth Circuit. *See, e.g., Simpson v. Citizens Bank*, Case Nos. 2:12-cv-10267-DPH-RSW, 2:12-cv-11604-DPH-RSW, 2014 U.S. Dist. LEXIS 205466 (E.D. Mich. 2014) (approving common fund settlement for approximately 30% of most probable damages); *Roberts v. Capital One*, 16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020) (approving cash fund of approximately 34% of the most likely recoverable damages for class members); *Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (approving a cash fund of between 13%-48% of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) (approving $2,900,000 settlement for approximately 38% of most probable aggregate damages); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) (approving $4,000,000 settlement for 25% of the most probable recoverable damages).

The dispute centers on fees that Fifth Third assesses against some Accounts for balance inquiries, withdrawals, deposits, or transfers undertaken at ATMs outside of Fifth Third's network of ATMs. With this Settlement, Plaintiffs have achieved their desired goal of compensating Account

Holders for Non-Fifth Third ATM Fees assessed for balance inquiries during the Class Period. There was a substantial risk they would not achieve that result. Before Settlement, Fifth Third sought dismissal. Although this Court denied the motion as to the settled claims, there was no certainty that Plaintiffs would prevail. At the time of Settlement, Plaintiffs still had to complete discovery, move for class certification, face a potential interlocutory appeal of class certification, engage in dispositive motion practice and trial, and a potential post-trial appeal. Decl. ¶37. While Plaintiffs partially prevailed at the motion to dismiss stage, there is no certainty that the Court would grant certification, that Plaintiffs would survive summary judgment or win at trial. *Id.* Thus, although Plaintiffs believe they have a strong case, there is no reason to litigate further and increase the risk of losing.

Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with Fifth Third outweighs the gamble of continued litigation. *Id. See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 781 (N.D. Ohio 2010) (approving settlement where the case "was a hard-fought legal battle from the filing of the complaint . . . to the final settlement conference" and explaining that "[b]ased on the Court's intimate knowledge of these proceedings, there is no reason to believe that either party would litigate the remainder of the case less vigorously"). This is particularly true at preliminary approval because "the Court, at this juncture, is not obligated to, nor could it reasonably, undertake a full and complete fairness review." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 350. Rather, "the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation." *Id.*; *see also Int'l Union*, 497 F.3d at 631 ("[W]e cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." (internal quotation marks omitted)). This Settlement provides valuable relief to Settlement Class Members without further risk or delay. Decl. ¶39.

Further, the Settlement is the product of arm's-length negotiations over an extended time

period by the Parties' experienced counsel with the assistance of a well-respected mediator through and after two mediation sessions. *Id.* ¶31. These negotiations led to a Settlement that is fair, reasonable, and in the Settlement Class's best interests. Class Counsel's assessment is entitled to considerable deference. In light of the risks, the $5,200,000.00 in cash is fair and reasonable. *Id.* ¶33.

> b. <u>The settlement suffers from no obvious deficiencies and does not improperly grant preferential treatment to the class representative or segments of the class.</u>

There is no evidence that the Settlement suffers from "obvious deficiencies, such as unduly preferential treatment to the class representatives or of segments of the class, or excessive compensation for attorneys[.]" *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 352 (citation omitted).[3] As discussed above, this Settlement provides valuable relief to the Settlement Class Members and treats all Settlement Class Members equally. Decl. ¶39.

Settlement Class Members need not submit claims and will automatically get paid by account credit or check. Because the Net Settlement Fund will be divided by the total number of unique Accounts, which shall yield the amount of each Settlement Class Member Payment, each Settlement Class Member will be treated equitably. *Peck v. Air Evac EMS, Inc.*, No. 5:18-CV-615-DCR-MAS, 2019 U.S. Dist. LEXIS 119011, at *13 (E.D. Ky. June 5, 2019).

While the Settlement provides for modest Service Awards to compensate the Class Representatives for stepping forward and their time dedicated to prosecuting this Action for the Settlement Class, courts recognize that such contribution awards are appropriate and do not grant preferential treatment. *See Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *10 (S.D. Ohio May 24, 2013). The proposed $5,000 Service Award each to Plaintiffs falls well within the range of awards approved in this Circuit. *See Liberte Capital Grp. v. Capwill*, No. 5:99-

---

[3] At this stage, the Court need not decide whether the Service Awards and attorneys' fees and costs ultimately will be approved, only whether "substantial grounds to doubt the preliminary fairness . . . of the proposed settlement agreement" exist. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 352.

cv-818, 2007 WL 2492461, at *1 (N.D. Ohio Aug. 29, 2007) ("Incentive awards, where appropriate, generally range from a few thousand dollars to $85,000"). Service Awards are warranted given Plaintiffs were essential to Class Counsel's ability to prepare and bring this case. Decl. ¶28. Thus, no preferential treatment to the Class Representatives or segments of the Settlement Class exists.

      c.   The opinions of class counsel favor approval of the settlement.

In assessing the settlement, this Court should also consider the experience of counsel and their views of the settlement. *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"). Here, Class Counsel includes attorneys experienced in consumer class action litigation. Decl. ¶¶8,11. Class Counsel is experienced in both the litigation and settlement of class actions of this type and has conducted necessary damages discovery confirming the amount of potential damages available to the class. *Id.* ¶23. Given the experience of Class Counsel in this matter and in similar matters, their opinions that the terms of this Settlement are fair, adequate, and reasonable should be given substantial weight in approving the Settlement.

      d.   The public interest also merits in favor of approval of the settlement.

"Public policy generally favors settlement of class action lawsuits." *In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, No. 1:09-WP-65000, 2016 U.S. Dist. LEXIS 130467, at *37 (N.D. Ohio Sept. 23, 2016) (quoting *Stinson v. Delta Mgmt. Assocs.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014)). "Settlement in this case 'provides relief for a substantial number of class members, avoids further litigation, and frees the Court's judicial resources.'" *Id.* (quoting *Stinson*).

> Settlement agreements should [ ] be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute."

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Here, the public interest is well-served by granting Preliminary Approval of the Settlement.

### C. Certification of the Settlement Class for Settlement Purposes Only Is Appropriate.

For settlement purposes only, Plaintiffs respectfully request the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. *See* Rule 23(e)(1). Certification of the proposed Settlement Class will allow notice to issue to inform members of the Settlement's existence and terms; of their right to be heard on its fairness; of their right to opt-out or object; and of the Final Approval Hearing. *See Manual for Compl. Lit.*, §§ 21.632, 21.633. For Settlement purposes only, Fifth Third does not oppose class certification. For the reasons set forth below, certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

**Numerosity.** Rule 23(a)(1) numerosity requires a class be "so numerous that joinder of all members is impracticable." *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) ("while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement" (internal quotation marks omitted)). Here, numerosity is met. The Settlement Class consists of approximately 1,100,000 Account Holders, and joinder of all such persons is impracticable. Decl. ¶41.

**Commonality.** "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389-390 (2011) (citation omitted). For commonality to be met, "there need only be one question common to the class, so long as the resolution of that question will advance the

litigation." *Philips v. Philip Morris Cos.*, 298 F.R.D. 355, 363 (N.D. Ohio 2014) (internal quotation marks and alteration omitted). Here, Rule 23(a)(2) is readily satisfied. Multiple questions of law and fact—centering on Fifth Third's use of the same account agreements and disclosures and its alleged systematic practice of improperly assessing Non-Fifth Third ATM Fees—are common to the Settlement Class, alleged to have injured all Settlement Class members in the same way, and would generate common answers to the claims' viability. Decl. ¶42.

**Typicality.** For similar reasons, Plaintiffs' claims are reasonably coextensive with those of absent Settlement Class members, satisfying Rule 23(a)(3). The typicality element is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)). Plaintiffs are typical of absent Settlement Class members because they were subjected to the same fee assessment practices, suffered from the same injuries, and will benefit equally from the relief provided by the Settlement. Decl. ¶44.

**Adequacy.** Plaintiffs and Class Counsel satisfy Rule 23(a)(4), which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. Rule 23(a)(4) ensures that the named representatives "will fairly and adequately protect the interests of the class." This requirement has two components: "1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle*, 708 F.3d at 757 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083, and *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976) (alteration in original)).

Here, Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class because they and the absent Settlement Class members have the same interest in the

relief the Settlement affords. The absent members of the Settlement Class have no diverging interests. Decl. ¶45. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. *Id.* ¶11. Class Counsel devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class. *Id.* ¶40.

**Predominance and Superiority.** Certification of the Settlement Class is also appropriate because the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). To satisfy predominance, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (internal quotation marks omitted). "The fact that a defense may arise or may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id.* (internal quotation marks omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) ("Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof." (internal quotation marks and alterations omitted)). This is readily satisfied because liability questions common to all Settlement Class members substantially outweigh any possible individual issues. Decl. ¶43. For example, each Settlement Class member's relationship with Fifth Third arises from the same account agreement and disclosures, and each were charged the same Non-Fifth Third ATM Fees. *Id.* ¶42. Further, resolving over a million claims in one action is far superior to individual suits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Settlement Class should be certified for settlement purposes only.

## V.    THE COURT SHOULD APPROVE THE NOTICE PROGRAM.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311.

The proposed Notice Program satisfies due process and Rule 23. As discussed above, the Notice Program provides for direct notice, including Email Notice and Postcard Notice, and the Long Form Notice available to Settlement Class members. *See* Fed. R. Civ. P. 23(c)(2) (explaining that individual notice should be provided to all members who can be identified through reasonable effort). Additionally, the Settlement calls for the creation and use of a Settlement Website to be maintained by an experienced Settlement Administrator and an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer frequently asked questions.

The Email Notice, Postcard Notice, and Long Form Notice each also satisfies due process and Rule 23. *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (approving notice that "described the terms of the settlement, the reasons for [class representatives' decision to settle], the legal effect of the settlement and the rights of the [class members] to voice their objections"). The notices here will

> reasonably apprise[ ] the Class Members of the nature and pendency of the Class
> Action and the class claims; of all material elements of the proposed settlement,

including but not limited to the definition of the Settlement Class, the relief available under the proposed settlement and steps necessary to obtain the relief; of the res judicata effect on Class Members and of the right, time and manner to object to the settlement; of the identity of Plaintiffs' and Defendant's Counsel and of information necessary to communicate with Plaintiffs' Counsel; that complete information is available in the Court's files; and of the right to appear at the Fairness Hearing, including through an attorney. Full opportunity has been afforded to Class Members to be heard at and to participate in the Fairness Hearing.

*Koenig v. USA Hockey, Inc.*, No. 2:09-cv-1097, 2012 WL 12926023, at *12 (S.D. Ohio 2012). Additionally, each form of notice "informs class members that they can receive more information from the settlement website," where they "can view summary information about the . . . Settlement, and can access the complete settlement agreement and other court documents . . . ." *Id.; accord Dudenhoeffer v. Fifth Third Bancorp*, No. 1:08-CV-538-SSB, 2016 U.S. Dist. LEXIS 187041, at *7 (S.D. Ohio July 11, 2016). Consequently, the Court should approve the Notice Program.

## VI. NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT.

The Class Action Fairness Act ("CAFA") requires that settling defendants give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). The Settlement Administrator will serve the CAFA notice for Fifth Third, along with a CD containing the documents described in Section 1715(b).

## VII. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv). As detailed above, Class Counsel diligently investigated and litigated Plaintiffs' claims obtaining a valuable recovery for the Settlement Class, and have and will continue to devote

24

substantial time and resources. Class Counsel have extensive experience with similar class action litigation and have been appointed class counsel in many class actions. *See* Decl., Exs. 1-5. Accordingly, the Court should appoint Plaintiffs' counsel to serve as Class Counsel.

### VIII.   THE PROPOSED SCHEDULE OF EVENTS.

The key Settlement-related dates, such as the time to disseminate notice or to opt-out or object, are based on when Preliminary Approval of the Settlement is granted, and when the Final Approval Hearing is scheduled. The Settlement-related dates calculated in accordance with the provisions of the Settlement are:

| EVENT | PROPOSED DUE DATE |
|---|---|
| Notice Program Complete | 60 days before Final Approval Hearing |
| Plaintiffs' Motion for Final Approval, including Application for Class Counsel Fees and Costs and Service Awards | 45 days before Final Approval Hearing |
| Opt-Out Deadline | 30 days before Final Approval Hearing |
| Objection Deadline | 30 days before Final Approval Hearing |
| Deadline to Respond to Objections | 10 Days before Final Approval Hearing |
| Final Approval Hearing | _____, 2021 at _____ am/pm (Week of _____, 2021) |

### IX.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court: (1) conditionally certify the Settlement Class, (2) appoint Plaintiffs as Class Representatives, (3) appoint Class Counsel, (4) preliminarily approve the Settlement, (5) approve the Notice Program and direct that notice be provided to the Settlement Class members, (6) approve and order the opt-out and objection procedures set forth in the Agreement, (7) stay all deadlines in the Action against Fifth Third pending Final Approval of the Settlement, and (8) set a date for a Final Approval Hearing. A proposed Preliminary Approval Order is attached as ***Exhibit E*** for the Court's convenience.

Date: February 3, 2021

*/s/ Jeff Ostrow*
Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
KOPELOWITZ OSTROW
FERGUSION WEISELBERG GILBERT
One W. Las Olas Blvd.
Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954)525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

Jeffrey D. Kaliel (pro hac vice)
Sophia G. Gold (pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW
10th Floor
Washington, DC 20009
(202) 350-7483
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Robb S. Stokar, Esq. (OH-0091330)
MINNILLO LAW GROUP CO., LPA
2712 Observatory Avenue
Cincinnati, OH 45208
Telephone: 513-723-1600 x20
Facsimile: 513-723-1620
rss@mlg-lpa.com

Hassan A. Zavareei (pro hac vice)
Andrea R. Gold (pro hac vice)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington DC, 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com

Stuart E. Scott (OH-0064834)
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone: 216-696-3232
Facsimile: 216-696-3924
sscott@spanglaw.com

*Attorneys for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFIY that on this 3rd day of February 2021, I electronically filed the
foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel
of record by, and may be obtained through, the Court's CM/ECF System.

*/s/ Jeff Ostrow*
Jeff Ostrow (pro hac vice)