**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **CARNELL SMITH**, on behalf of himself and others similarly situated, | Case No.: 1:18-cv-00464 |
| Plaintiffs, | Judge Douglas R. Cole<br>Magistrate Judge Stephanie K. Bowman |
| vs. | |
| **FIFTH THIRD BANK**, | |
| Defendant. | |
| **LENOX MAGEE,** | |
| Plaintiff, | Case No.: 1:18-cv-00464 |
| **vs.** | |
| **FIFTH THIRD BANK,** | |
| Defendant. | |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT

Plaintiffs, Carnell Smith and Lenox Magee, hereby move the Court to (a) grant Final Approval to the Settlement Agreement as fair, reasonable, adequate, and binding on all members of the Settlement Class; (b) confirm the certification of the Settlement Class pursuant to Federal Rule 23; (c) confirm the approval and appointment of Class Counsel and the Class Representatives to represent the Settlement Class; and (d) direct the Parties and their counsel to implement the Settlement Agreement according to its terms.

The legal and factual bases supporting this Motion are set forth in the attached Memorandum and the Exhibits thereto, including the Declaration of Andrew Perry and the Joint Declaration of

1

Robb Stokar, Jeffrey Kaliel, Jeff Ostrow, Andrea Gold and Stuart Scott. A proposed Order is also attached.

Respectfully Submitted,


Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld
KOPELOWITZ OSTROW
FERGUSION WEISELBERG GILBERT
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954)525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com


Jeffrey D. Kaliel (pro hac vice)
Sophia G. Gold (pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW
10th Floor
Washington, DC 20009
(202) 350-7483
jkaliel@kalielpllc.com
sgold@kalielpllc.com


Hassan A. Zavareei (pro hac vice)
Andrea R. Gold (pro hac vice)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington DC, 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com


_/s/ Robb S. Stokar_
Robb S. Stokar, Esq. (OH-0091330)
MINNILLO LAW GROUP CO., LPA
2712 Observatory Avenue
Cincinnati, OH 45208
Telephone: 513-723-1600 x20
Facsimile: 513-723-1620
rss@mlg-lpa.com


Stuart E. Scott (OH-0064834)
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone: 216-696-3232
Facsimile: 216-696-3924
sscott@spanglaw.com

*Attorneys for Plaintiffs and the Settlement Class*

<u>**MEMORANDUM**</u>

## I.  INTRODUCTION

Plaintiffs, Carnell Smith and Lenox Magee, individually and on behalf of the Settlement Class,[1] respectfully request that the Court grant Final Approval of the class action Settlement between Plaintiffs and Defendant, Fifth Third Bank. Final approval of this Settlement is appropriate because the Settlement is the product of extensive arm's-length negotiations between experienced counsel and facilitated by mediator Michael Unger, Esq., of Ulmer & Berne, LLP. The Settlement is fair, reasonable, and adequate, providing substantial monetary relief for the benefit of the Settlement Class. It therefore merits Final Approval.

As detailed in Plaintiffs' concurrently filed Memorandum in Support for Attorneys' Fee Award, Expense Reimbursement, and Service Awards (Dkt. 128), it was not until after Plaintiffs partially prevailed against motions to dismiss filed by Fifth Third, engaged in significant discovery, and participated in two mediations with a well-respected Ohio neutral, that the Parties reached a settlement of these claims regarding the assessment of small ATM fees on consumer checking accounts. *See* Joint Declaration of Class Counsel, Dkt. 128 at ¶¶ 17-43, attached as Exhibit 2 ("Joint Decl.").

The Parties agreed to settle the Action for a $5,200,000 cash common fund, which represents approximately 33% of best-day damages had the Court certified a nationwide class and had Plaintiffs prevailed at trial. The Settlement fund will automatically be distributed to Settlement Class Members without the requirement for a claims process or reversion to Fifth Third. Fifth Third provided the class data, obviating the costs associated with Plaintiffs needing to use an expert to identify Settlement Class Members. Further, as a result of the Action, Fifth Third modified its Account disclosures to

---

[1] All capitalized terms herein have the same meanings as those defined in the Settlement Agreement, attached as Exhibit 1.

better inform its customers that they could be charged a fee for a balance inquiry at an ATM outside of Fifth Third's network of ATMs. These modifications will likely result in significant prospective financial savings to current Settlement Class members and current and future Account Holders.

## II.    BACKGROUND

### A.   The Litigation

In order to avoid redundancy, Plaintiffs will not repeat the extensive litigation history, which is summarized both in Plaintiffs' Motion for Preliminary Approval and in the concurrently filed Plaintiffs' Motion for Attorneys' Fees, Expense Reimbursement, and Service Awards.

### B.   Negotiation of the Proposed Settlement

The Parties selected Michael Ungar, Esq. to serve as the mediator based on his experience litigating complex civil litigation, including class actions, in the financial services sector.  The Parties submitted detailed mediation statements in connection with the mediation.  On November 10, 2019, at the mediator's request, mediation was rescheduled and occurred on December 3, 2019.  The Action did not settle that day.  Thereafter, the Parties continued good faith settlement discussions for several weeks but were unable to resolve the matter.

In mid-March of 2020, the Parties began discussing the possibility of a second mediation session with Mr. Ungar, and ultimately scheduled it for July 23, 2020.  The Parties also continued their meet and confer efforts regarding discovery throughout the summer of 2020. The second mediation occurred on July 23, 2020, with Mr. Ungar and some of the participants attending in person and others virtually.  Again, the Parties engaged in good faith, hard-fought negotiations, but the Action again did not settle that day.

The Parties continued to meet and confer regarding discovery over the following weeks, including about completing document production and depositions. Further, they continued to engage in settlement negotiations via telephone and email.  On October 5, 2020, the Parties reached an

agreement in principle to resolve the Action on a classwide basis.

The Parties continued to negotiate the terms of the Settlement from October 5, 2020, through February 1, 2021, when they signed the Agreement. The Parties did not discuss attorneys' fees or Service Awards until after agreeing on the material terms of the Settlement.

### C.        The Settlement Agreement

#### 1.        Settlement Class and Class Period Definitions

The Settlement Class is defined as:

> All Current Account Holders and Former Account Holders of Fifth Third Bank who were assessed one or more Non-Fifth Third ATM Fees during the Class Period for making a balance inquiry at an ATM outside of Fifth Third Bank's network of ATMs or were assessed more than one Non-Fifth Third ATM Fee for undertaking a balance inquiry during the same ATM visit as a cash withdrawal or other funds transfer.

Excluded from the Settlement Class are Fifth Third Bank, its parents, subsidiaries, affiliates, current officers and directors; all customers who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members. The Class Period is January 1, 2010, through October 31, 2018.

#### 2.        The Settlement Consideration, Allocation, Distribution and Residual Funds

a.   Cash Settlement Fund

The Settlement provides meaningful and immediate relief to Settlement Class Members in the form of direct cash payments. Fifth Third has agreed to establish a $5,200,000.00 cash Settlement Fund for the benefit of the Settlement Class. The Settlement Fund shall be used to pay Settlement Class Member Payments, Settlement Administration Costs, attorneys' fees, costs, and Service Awards that the Court may award, and any *cy pres* payment. *See* Dkt. 124-1 at §§ X, XII, XVI.

b.   Allocation, Distribution and Residual Funds

Settlement Class Members did not need to submit a claim form to receive a Settlement Class Member Payment. The Settlement Fund will be distributed to Settlement Class Members according to the allocation and distribution plan set out in the Agreement. The amount of the Settlement Class Member Payment to which each Settlement Class Member is entitled is to be determined using the following methodology or such other methodology as would have an equivalent result:

i.  All Accounts held by Settlement Class Members for which Fifth Third assessed one or more Non-Fifth Third ATM Fees for balance inquiries undertaken at ATMs outside of Fifth Third's network of ATMs during the Class Period have been identified.

ii. The Net Settlement Fund will then be divided by the total number of unique Accounts, which shall yield the amount of each Settlement Class Member Payment. For clarification, the Settlement Class Members for jointly held accounts will receive only one Settlement Class Member Payment per unique Account and each Settlement Class Member Payment will be the same, regardless of how many Non-Fifth Third ATM Fees were assessed against a unique Account for undertaking balance inquiries at ATMs outside of Fifth Third's network of ATMs.

Settlement Class Member Payments to Current Account Holders will be made by crediting each unique account or, if not feasible or reasonable to make a payment by a credit, by check. Former Account Holders will receive their Settlement Class Member Payments by check. *Id.* For those Former Account Holders with joint accounts, checks will be payable to all Account Holders, and will be mailed to the first/primary Account Holder.

The Settlement Administrator will make a reasonable effort to locate the proper address for any checks that are returned as undeliverable and re-mail it once to the updated address or, in the case of a jointly held account, and in the Settlement Administrator's discretion, to an accountholder other than the one listed first. *Id.* Checks will remain valid for 180 days.

Within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, the Residual Funds from uncashed checks will be distributed as follows: The first $200,000.00 of any Residual Funds will be payable to Fifth Third as reimbursement for a portion of the Settlement Administration Costs paid as part of the Settlement Fund. Second, in the event that there are still Residual Funds in the Settlement Fund, at the election of Class Counsel and Counsel for Fifth Third and subject to the approval of the Court, the funds may be distributed to Settlement Class Members via a secondary distribution. *Id.*

If the costs of preparing, transmitting and administering such subsequent payments are not feasible and practical to make secondary distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair, Class Counsel and Fifth Third shall seek Court approval to distribute the Residual Funds to a *cy pres* recipient. The Parties agree to seek Court approval of Jump$tart Coalition for Personal Financial Literacy (https://www.jumpstart.org/) as the *cy pres* recipient. *Id.*

### 3. Preliminary Approval, Notice Program, Objections and Opt-Outs

On February 9, 2021, the Court granted Preliminary Approval to the proposed Settlement, finding its terms to be "fair, reasonable, and adequate…." Dkt. 125 at PAGEID # 1171. The Court's Preliminary Approval Order approved the proposed Notice Program and directed the Settlement Administrator to "cause the Email Notice and Postcard Notice to be sent to the Settlement Class in accordance with the Notice Program." *Id.* at PAGEID # 1174-1175.

The Notice Program was completed in compliance with the requirements of the Preliminary Approval Order and the Agreement. See *See* Exhibit 3, Declaration of Andrew Perry in Support to Implementation of Notice Program ("Perry Dec.") The Settlement Administrator identified 1,188,805 unique Settlement Class members and disseminated 1,147,612 successful Notices to Settlement Class members, by both e-mail and postcard, through data provided by Fifth Third as directed in Paragraph 83 of the Agreement[2]. *See* Dkt. 124-1, PAGEID # 1064. Perry Dec. at ¶¶ 5, 13.

The Settlement Administrator e-mailed 866,756 notices to Settlement Class members. Of those Notices, the Settlement Administrator encountered 63,746 email bouncebacks, resulting in a total of 803,010 successfully delivered e-mail notices. The Settlement Administrator successfully sent 344,602 postcard notices to Settlement Class members as detailed below. Perry Dec. at ¶¶ 10-13.

| | |
|---|---|
| 322,302 | Initial Postcard Notice |
| 63,741 | Postcard Notice of unsuccessful Email Notices |
| 114 | Supplemental Postcard Notice |
| (58,477) | Undeliverable Postcard Notices |
| 16,922 | Remailed Postcard Notices from Search |
| **344,602** | **Successful Postcard Notices** |

In total, the Settlement Administrator was able to successfully send notice to 96.53% of the Settlement Class members as follows. Perry Dec. at ¶ 13.

| | |
|---|---|
| **1,147,612** | **Total Successful Notices** |
| | |
| 1,188,805 | Initial unique Settlement Class members |
| | (1,370,107 - 181,302 duplicates) |
| 114 | Additional Settlement Class members |
| **1,188,919** | **Total unique Settlement Class members** |

1,147,612 / 1,188,919    96.53%

Any objections to the Settlement or requests for exclusion from the Settlement are due to be

---

[2] All data on notice dissemination is current as of May 21, 2021.

postmarked by June 8, 2021. Dkt. 125, PAGEID # 1181. As of May 21, 2021, the Settlement Administrator received 1 (insufficient) objection and 18 opt-outs.[3] Plaintiffs and the Settlement Administrator will update these figures with an additional filing to the Court after the opt-out and objection deadline passes.

## III.   ARGUMENT

### A.   Final Class Certification is Appropriate

This Court preliminarily approved class certification for Settlement purposes in its February 9, 2021 Order. Dkt. 125 at PAGEID # 1181. At this juncture, with the Settlement process successfully implemented, Final Approval is appropriate. The following is a summary of the detailed briefing previously submitted in Plaintiffs' Unopposed Motion for Preliminary Approval. Dkt. 124.

#### 1.   The Elements of Rule 23(a) Are Satisfied

For a lawsuit to be maintained as a class action under Rule 23, the plaintiff must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). *See, e.g., Gen. Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004). Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems. . .for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). Here, for Settlement Purposes only, all four elements are satisfied with respect to the Settlement Class. For Settlement purposes only, Fifth Third did not oppose class certification.

---

[3] The Clerk of Court for the Southern District of Ohio, Western Division at Cincinnati received one objection, which is more fully discussed in section III(B)(6), below.

(a)     Numerosity

Rule 23(a)(l) requires that Plaintiffs demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions ... the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Medical Syst., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). In the present case, the Settlement Class consists of 1,188,919 members and therefore easily satisfies the numerosity requirement.

(b)     Commonality

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011). "Their claims must depend upon a common contention of such a nature that it is capable of classwide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. The Sixth Circuit has instructed that class certification is appropriate "'if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.'" *In re Whirlpool Corp. Front-Loading Washer Products Liability*, 678 F.3d 409, 420 (6th Cir. 2012) (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

Applying these principles, the commonality requirement of subsection (a)(2) is satisfied. Here, Plaintiffs contend that several common questions exist, including whether Fifth Third breached its contract with Plaintiffs when it assessed Non-Fifth Third ATM Fees. Given the presence of common questions of law and fact emanating from Plaintiffs' claims, the commonality requirement is satisfied.

(c)     Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims ... of the class." The typicality element is designed to assess "whether a sufficient relationship exists

between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. GMC,* 133 F.3d 388, 399 (6th Cir.1998). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Medical Syst., Inc.*, 15 F.3d at 1082 (citation omitted); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).

Here, Plaintiffs' claims are the same in all significant aspects to those of the Settlement Class members. The issue of whether Plaintiffs were unlawfully charged Non-Fifth Third ATM Fees is common to all Settlement Class members and central to Plaintiffs' claims. By litigating this central liability issue, Plaintiffs can be reasonably expected to advance the interests of all absent Settlement Class members. Accordingly, the typicality requirement is satisfied.

(d)      Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "There are two criteria for determining this element: 1) the representatives must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976) (citing *Gonzalez v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)). The adequacy element tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *In re Am. Medical Syst., Inc.,* 75 F.3d at 1083 (internal quotation marks and citation omitted). "Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to vigorously prosecute the interests of the class." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (internal quotation omitted), *cert. denied*, 531 U.S. 1148 (2001). These two components are designed to ensure that absentee class members' interests are fully pursued.

i.    The Class Representatives' Interests    Are Not Antagonistic to Those of the Settlement Class

Plaintiffs have adequately served, and will continue to adequately serve, as Class Representatives for the benefit of the proposed Settlement Class. "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel, ... which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (internal quotation marks and citations omitted). Here, Plaintiffs and Settlement Class members are equally interested in obtaining meaningful compensation from Fifth Third, and thus the Plaintiffs satisfy the adequacy requirement. *See also Bartell v. LTF Club Operations Co.*, S.D.Ohio No. 2:14-cv-401, 2020 U.S. Dist. LEXIS 229682, at *22 (Aug. 7, 2020) (holding that when Class Representatives and Class Members "share common interests," no conflict exists).

ii.    The Settlement Class Has Been Adequately Represented by Class Counsel

The second prong of Rule 23(a)(4) looks "to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Stout*, 228 F.3d at 717. The existence of the elements of adequate representation are presumed. 2 Newberg on Class Actions §7.24 at pp. 7-81-82. Here Class Counsel have extensive experience in prosecuting similar actions. Copies of Class Counsel's firm resumes were attached as Exhibits to the Joint Declaration of Class Counsel Jeffrey Kaliel, Robb Stokar, Jeff Ostrow, Andrea Gold, and Stuart Scott in support of Motion for Preliminary Approval of Settlement. Dkt. 124-2, PAGEID # 1090-1143.

Class Counsel have vigorously represented the interests of the Plaintiffs and the Settlement Class members and have reviewed critical information, enabling them to negotiate an advantageous

settlement and advocate for the Settlement Class.  *See* Dkt. 124-2, PAGEID # 1090-1099.  The adequacy requirement is thereby satisfied.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here in a settlement context, Plaintiffs now turn to consideration of the factors which, independently, justify class treatment of this action under subdivision 23(b)(3) of the rule.

### 2. The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

In addition to satisfying Rule 23(a), the Settlement Class qualifies under Rule 23(b)(3). Rule 23(b)(3) provides that a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. 591, 623 (1997). "[A] plaintiff must establish that the issues in the class action that are subject to generalized proof ... predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (internal quotation marks and citation omitted).

Common questions of law and fact predominate in the instant action.  In the settlement context, there is no danger that individual variations in the type or magnitude of damages suffered by individual Settlement Class members will affect predominance, as the Plaintiffs have the same type of damages and will receive the same type of relief as members of the Settlement Class.  In the context of a settlement, individual issues which might otherwise defeat class certification do not have to be

litigated and therefore "become irrelevant, allowing the common issues to predominate." *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 376 (N.D. Ohio 2001).

The other requirement of Rule 23(b)(3) that must be satisfied is the superiority requirement (*i.e.*, that a class action suit provides the best way of managing and adjudicating the claims at issue). A class action is a superior means of adjudicating claims when certifying a class "would achieve economies of time, effort and expense and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (quoting the Advisory Committee Notes).

Normally, "[t]o determine whether a class action is the superior method for fair and efficient adjudication, the district court should consider the difficulties of managing a class action...." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630-31 (6th Cir. 2011) (internal quotations and cites omitted). In the settlement context, however, "the [manageability] consideration is not relevant." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 347.

The Settlement Agreement renders a class action superior to other potential avenues of recovery for the Plaintiffs and the Settlement Class. This case exemplifies how a dispute can be resolved to effectuate the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. *See* Wright, Miller & Kane, *Federal Practice & Procedure*, Civil 2D § 1754. *See also Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2014 U.S. Dist. LEXIS 109302, at *55 (June 19, 2014). (Use of the class method is warranted particularly because class members are not likely to file individual actions — the cost of litigation would dwarf any potential recovery.)

The Settlement provides Settlement Class Members with an ability to obtain certain and definite compensatory relief promptly and contains well-defined procedures to assure due process for each Settlement Class member, including the right to participate or elect to be excluded.  By contrast, individualized litigation carries with it great uncertainty, risk, and cost, and provides no guaranty that the Settlement Class member will obtain timely compensatory relief at the conclusion of the litigation process.

Settlement on a class basis also provides Settlement Class Members with prompt compensation for their damages.  Continued litigation on the other hand, whether on an individual or class-wide basis, is fraught with uncertainty.  And, to the extent there is a recovery to the Plaintiffs or the Settlement Class as a result of a judgment, any such recovery may be subject to substantial delay associated with appellate proceedings.  In sum, the requirements of Rule 23(b)(3) are satisfied and certification of the Settlement Class is appropriate.

**B.   The Settlement Agreement Merits Final Approval**

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate."  Courts consider the following factors when determining whether a proposed settlement meets that standard:

(1) the Plaintiff's likelihood of success on the merits balanced against the amount and form of relief offered in the Settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the judgment of experienced trial counsel;

(5) the nature of the negotiations;

(6) the public interest; and

(7) objections raised by Class Members.[4]

_____

[4] *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.

As a general matter, courts within this Circuit have noted the importance of refraining from any attempts to resolve the legal and factual issues that are the basis of the underlying lawsuit when considering the foregoing factors. *See Levell v. Monsanto Research Corp.,* 191 F.R.D. 543, 550 (S.D. Ohio 2000). It is not appropriate to "withhold approval simply because the benefits accrued from the [agreement] are not what a successful plaintiff would have received in a fully litigated case." *Levell,* 191 F.R.D. at 550. A settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed." *Bronson v. Bd. of Ed.*, 604 F.Supp. 68, 74 (S.D.Ohio 1984) (quoting *Williams v. Vukovich,* 720 F.2d 909, 922 (6th Cir.1983)). Thus, it is well-settled that "class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class." *Id.*; *see also Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *12 (N.D. Ohio Sept. 1, 2011) (citing authorities). "In general, a reviewing court's task 'is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question is rather whether the parties are using settlement to resolve a legitimate legal and factual disagreement.'" *Brent*, 2011 WL 3862363, at *12 (quoting *UAW*, 497 F.3d at 632).

Applying these factors here leads to the conclusion that this Settlement is fair, adequate, and reasonable.

### 1. The Likelihood of Success Balanced Against the Amount and Form of Relief Offered by the Settlement Weigh in Favor of Approving the Settlement

The risks of establishing liability and damages are relevant factors to consider when determining whether a class action settlement is fair, adequate, and reasonable. *See In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. at 351; *Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615, 625

_____

1983).

(9th Cir. 1982). From the outset of this litigation, Fifth Third has consistently maintained that its Non-Fifth Third ATM Fees were lawful and complied with its Account Agreements. Fifth Third maintained the position that such fees were clearly defined in its Account Agreement.

Thus, even assuming Plaintiffs could obtain an order certifying this case as a class action, and obtain an order granting summary judgment or prevail at trial, they would still face the potential for prolonged litigation, including appeals to the Sixth Circuit.

The defenses available to Fifth Third are significant and include a substantial challenge to the merits of Plaintiffs' claims. Fifth Third has argued that it was permitted to assess the Non-Fifth Third ATM Fees based on the plain language of its Deposit Account Rules & Regulations. *See*, generally, Dkt. 55-1. Fifth Third has also argued that its contracts were not ambiguous and its practice regarding the assessment of Non-Fifth Third ATM Fees was well known to its customers.

By contrast, the Settlement offers immediate, significant, and substantial relief to all Settlement Class Members. The Settlement delivers real value to Settlement Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, the inherent risks associated with this litigation favor approval of this Settlement.

### 2. The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of Approving the Settlement

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent*, 2011 WL 3862363, at \*16 (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y.2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.50 (4th ed. 2002)). Similarly, the complexity, expense, and likely duration of litigation here favor final approval of the Settlement. Complete fact discovery in this

matter would have been voluminous, complicated and complex. Based on the procedural posture to date, Fifth Third would likely have moved for summary judgment at the conclusion of discovery. Further, the case would have required extensive data expert analysis and numerous depositions. Continued litigation would certainly be an involved and expensive process.

Moreover, the resulting litigation, including any appeals, could take many years and involve substantial expense for all Parties. The uncertainty of continued litigation stands in stark contrast to the immediate relief offered by this Settlement. Therefore, the Settlement provides Settlement Class Members with real benefits now without having to endure the risks, duration, and expense that would surely follow if this litigation were to continue. *See Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The Court has no doubt that the required trials or hearings would have been time consuming, and that a complete resolution of the case would not be reached for several more years. This factor clearly weighs in favor of the proposed settlement.").

### 3. The Nature and Stage of Proceedings Weigh in Favor of Approving the Settlement

When considering the Settlement, the Court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Vukovich,* 720 F.2d at 922-923. At its heart, this case concerns the contractual relationship between Fifth Third and its customers, including Plaintiffs. Each impacted customer's account would have to be analyzed to determine whether the Non-Fifth Third ATM Fees were incurred and the total amount of those fees.

The amount of fact discovery and time spent conducting that discovery would be enormous. The Parties recognized that absent an early settlement this case likely would have consumed significant resources of counsel.

That does not mean that the Parties failed to analyze the strengths and weaknesses of their respective cases. In fact, significant factual information has been collected through a formal, written discovery process allowing both sides to evaluate their respective strengths and weaknesses. Although

written discovery had not yet been concluded, Fifth Third produced in excess of tens of thousands of pages in response to Plaintiffs' Requests for Production of Documents. Therefore, sufficient investigation has been done to determine that the terms of this Settlement are fair and reasonable under the circumstances. As a result, this factor counsels in favor of approval of the Settlement.

### 4. Experienced Class Counsel Negotiated The Settlement At Arm's Length

The Court must consider whether the Settlement is the product of arms-length rather than collusive bargaining. *Bronson*, 604 F.Supp. at 73. As discussed in Plaintiffs' Motion for Preliminary Approval [Dkt. 124], the Parties' settlement negotiations took place at arms' length, without collusion, with the assistance of an experienced neutral, and fully preserved the integrity of the adversarial process. Settlement in this case was only achieved by conducting multiple mediation sessions with a mediator experienced in both class action matters and the financial services industry. Dkt. 124, PAGEID # 1022.

Armed with extensive experience litigating similar bank fee and other class action cases, *see generally* **Joint Dec.,** **Ex. 2**, Class Counsel's collective wisdom was to make every reasonable effort to achieve a settlement taking into account the prospective risks, while extracting as much value out of the settlement. Prior to and during the litigation, Class Counsel engaged in an extensive factual investigation of the class claims, actively and diligently analyzing the strengths and weaknesses of the case.

The fairness of the settlement process and the Settlement itself were also shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. "The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983) (citing *Stotts v. Memphis Fire Dep't,* 679 F.2d 541, 554 (6th Cir. 1982)), *rev'd on other grounds*, 467 U.S. 561 (1984). Accordingly, the Settlement was not the product of collusive dealings, but, rather, was informed by the vigorous

17

prosecution of the case by experienced and qualified counsel on both sides.

### 5. The Public Interest Weighs in Favor of Approving the Settlement

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *Brent*, 2011 WL 3862363, at *12 (quoting 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11.41 (4th ed. 2002)).  The Sixth Circuit has noted that "settlement agreements should ... be upheld whenever equitable and policy considerations so permit.  By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before overburdened courts, and to citizens whose taxes support the latter.  An amicable compromise provides the more speedy and reasonable remedy for the dispute."  *Stotts*, 679 F.2d at 555 n.11.  Particularly in light of the immediate benefits that the Settlement provides to Settlement Class Members, and the fact that this case was settled before further extensive discovery and likely further dispositive motion practice, this "overriding public interest" would be well-served by approval of this Settlement.

### 6. The Response of the Class Members Supports Final Approval

One of the factors typically considered in determining the reasonableness of a settlement is the reaction of the class.  *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008) (settlement found to be fair in light of 79 objections out of nearly 11,000 absent class members).  More than 1.1 million successful Notices were disseminated directly to Settlement Class members.  Perry Dec. at ¶ 13.

The fact that only 18 of more than 1.1 million Settlement Class members opted-out of the Settlement supports the inference that the Settlement is fair.  Perry Dec. at ¶ 18.  *See Smith v. Ohio Dep't of Rehab. & Corr.*, No. 2:08-cv-15, 2012 WL 1440254, at *20 (S.D. Ohio Apr. 26, 2012) ("[I]f only a small number of objections to a class action settlement are received, that fact can be viewed as indicative of the adequacy of the settlement."); *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 500 (E.D. Mich. 2008); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007) ("Generally, however, a small

number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate."). *See also Olden, Supra.* Therefore, a "miniscule percentage of objections relative to the size of the Class weighs in favor of finding the Private Settlement Agreement to be fair, reasonable and adequate." *Smith*, 2012 WL 1440254, at \*20. Here, there is one pending, deficient objection and only 18 exclusions. Thus, there can be little doubt that the Settlement is fair, reasonable and adequate.

The sole objection at the time of filing does not comply with the Court's Preliminary Approval Order and it should be denied on that basis alone. The deficient objection lacks: the objector's telephone number, the number of times the objector has objected to a class action settlement within the five years preceding the date the objection was filed (and the relevant required information surrounding such objections), the identity of counsel who may have represented the objection in any past objections (and the relevant information regarding the relationship with counsel), the list of persons called to testify at the Final Approval Hearing in support of the objection, whether the objector personally intends to appear and/or testify at the Final Approval Hearing and the objector's signature. *See* Dkt. 124-1, PAGE ID# 1063-1064. Further, the objection was only provided to the Clerk of Court and not provided to all counsel and the Claims Administrator as required by the Court's Preliminary Approval Order. Per the Court's Order, in light of these deficiencies, the objector "shall be deemed to have waived any objections and shall be forever barred from raising such objections in this or any other action or proceeding, absent further order of the Court." *Id.*

Substantively, the objection misinterprets the terms of the Settlement. The objector seems to believe the possible $200,000.00 Residual Fund represents the entirety of Settlement. *See* Perry Dec., ¶ 17, Ex. D, Dkt. 124-1, PAGE ID # 1071-1072. In reliance upon that misunderstanding, the objector mistakenly believes only $133,333.33 will be available to compensate the Class Members. Of course, this is not what the Settlement contemplates. The objector also states that she was unable to obtain the Long Form Notice from the Settlement Website, but the Long Form Notice has been available to

Settlement Class members, without interruption, as part of the Important Documents page on the Settlement Website since March 15, 2021. *See* Perry Decl. at ¶ 14. Should the objector not withdraw her objection, it should be disregarded and overruled as it does not present an impediment to Final Approval.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Final Approval of this Settlement.    A proposed Order Granting Final Approval is attached for the Court's convenience as Exhibit 4.

Respectfully Submitted,

Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld
KOPELOWITZ OSTROW
FERGUSION WEISELBERG GILBERT
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954)525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

Jeffrey D. Kaliel (pro hac vice)
Sophia G. Gold (pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW
10th Floor
Washington, DC 20009
(202) 350-7483
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Andrea R. Gold (pro hac vice)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington DC, 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com

_/s/ Robb S. Stokar_
Robb S. Stokar, Esq. (OH-0091330)
MINNILLO LAW GROUP CO., LPA
2712 Observatory Avenue
Cincinnati, OH 45208
Telephone: 513-723-1600 x20
Facsimile: 513-723-1620
rss@mlg-lpa.com

Stuart E. Scott (OH-0064834)
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone: 216-696-3232
Facsimile: 216-696-3924
sscott@spanglaw.com

*Attorneys for Plaintiffs and the Settlement Class*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24,2021 I electronically filed the foregoing Plaintiffs' Motion for

Final Approval of Class Action Settlement using the CM/ECF system which will send notification

of such filing to all counsel of record.


<u>/s/ Robb S. Stokar</u>
Robb S. Stokar (OH-0091330)

22