## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**CARNELL SMITH, on behalf of himself and others similarly situated,**

        **Plaintiff,**

  **v.**

**FIFTH THIRD BANK,**

        **Defendant.**

**Case No. 1:18-cv-464 (Lead Case)**
**Judge Douglas R. Cole**
**Magistrate Judge Stephanie K. Bowman**

---

**LENOX MAGEE,**

        **Plaintiff,**

  **v.**

**FIFTH THIRD BANK,**

        **Defendant.**

**Case No. 1:18-cv-722 (Member Case)**

## ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING APPLICATION FOR ATTORNEYS' FEES AND COSTS, AND SERVICE AWARD

This matter is before the Court on Plaintiffs' Motion for Final Approval of Settlement (Doc. 127) and Plaintiffs' Motion and Memorandum in Support for Attorneys' Fees, Expense Reimbursement and Service Award (Doc. 128). The Court held a fairness hearing on July 8, 2021, to consider the issues these motions present. At that hearing, Class Counsel presented additional information about the implementation of the Settlement and addressed an objection to the Settlement previously filed with the Court. The Court also heard from counsel for Defendant, and

from Anthony Hoepf, an individual who claimed to be a member of the Settlement Class.

## BACKGROUND AND SETTLEMENT TERMS

This case involves a claim by Plaintiffs, on behalf of themselves and a putative class, that Fifth Third improperly charged Fifth Third customers certain ATM fees—in particular, a fee for making a balance inquiry from a non-Fifth Third network ATM. The proposed Settlement Class includes:

> All Current Account Holders and Former Account Holders of Fifth Third Bank who were assessed one or more Non-Fifth Third ATM Fees during the Class Period for making a balance inquiry at an ATM outside of Fifth Third Bank's network of ATMs or were assessed more than one Non-Fifth Third ATM Fee for undertaking a balance inquiry during the same ATM visit as a cash withdrawal or other funds transfer.

(Settlement Agreement, Doc. 127-1, #1218). The Class period is from January 1, 2010, through October 31, 2018. Excluded from the Settlement Class are (1) Fifth Third Bank, its parents, subsidiaries, affiliates, current officers and directors; (2) all customers who made a timely election to be excluded; and (3) all judges assigned to this litigation and their immediate family members.

The settlement itself consists of Fifth Third establishing a $5,200,000 settlement fund. That fund will be used to fund payments to Settlement Class members, to pay attorneys' fees, costs, and service awards, and to pay settlement administration costs, with residual amounts, if any, used for a cy pres payment. As for attorneys' fees, the proposed settlement provides that Class Counsel will receive 33.33% of the Settlement Fund (or $1,733,160) as fees, and will separately recover the approximately $50,000 in litigation costs they expended. The service award for

the Class Representatives is $5,000 each. While the Settlement Agreement does not specify the Settlement Administrator's costs and fees, at the hearing Class Counsel represented that the Administrator has now agreed to cap these expenses at $615,000, and that the cap will be hit here.

In terms of distributions to the Settlement Class members, any class member (i.e., any account holder charged the allegedly wrongful fee one or more times on a given account), who has not opted out, will receive an equal payment based on dividing the remaining amount available in the Settlement Fund (i.e., after paying the fees and costs noted above), which the Settlement Agreement calls the Net Settlement Fund, by the number of unique accounts in the Settlement Class. Those payments will be made either by direct deposit (for class members who currently have accounts at Fifth Third at the time of distribution) or by check (for class members who no longer have accounts at Fifth Third). If any checks are returned or uncashed, Fifth Third is entitled to retain up to $200,000 of these residual funds as reimbursement for costs it may incur in connection with settlement administration. (Fifth Third has agreed to take on certain administrative tasks under the Settlement Agreement.) Fifth Third cannot, however, keep an amount in excess of the administration costs it actually incurs, nor in any event more than $200,000. If additional residual funds remain, those funds will go either (1) to the other class members, by way of a secondary distribution, or (2) if the costs of such a distribution make it economically nonviable, to the Jump$tart Coalition for Personal Financial Literacy, as a cy pres award, subject to Court approval.

## LEGAL ANALYSIS

**A.     The Settlement is Fair and Reasonable.**

As another court in the District observed in *Connectivity Systems Inc. v. National City Bank*, No. 2:08-cv-1119, 2011 WL 292008 (S.D. Ohio, Jan. 26, 2011), a case on which Plaintiffs rely, "class actions are unique creatures with enormous potential for good and evil." *Id.* at *1 (quoting *Johnson v. General Motors Corp.*, 598 F.2d 432, 439 (6th Cir. 1979) (Fay, J., concurring) (brackets omitted)). Examples of the "potential for good" arise from, among other things, the fact that the class vehicle can allow a disparate group of individuals, each of whom has suffered a similar, but sometimes individually small, harm to band together to vindicate their shared interest—an interest that would not be economically viable to pursue on an individual basis. The "potential for evil," on the other hand, arises from the possibilities, among others, (1) that the class vehicle can in some instances be used to pursue dubious claims, in an effort to obtain a litigation-cost-avoidance-based settlement, or (2) that the class action may result principally in attorneys' fees for class counsel, more so than meaningful relief for class members. *See, e.g.*, *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006) (citing cases).

In an attempt to promote the "potential for good" and minimize the "potential for evil," the Federal Rules of Civil Procedure "provide[] important protections for class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Id.* Specifically, Rule 23(e) requires the Court to ensure that three steps occur before it gives final approval to a proposed class settlement:

1.    The Court must preliminarily approve the proposed settlement.

2.    Members of the proposed settlement class must receive notice of the proposed settlement; and,

3.    The Court must hold a fairness hearing, after which it must determine whether the proposed settlement is fair, reasonable, and adequate.

*Connectivity Sys.*, 2011 WL 292008, at *1 (citing Fed. R. Civ. P. 23(e)).

Here, the first two steps, and part of the third, have already occurred. The Court granted preliminary approval to the settlement on February 9, 2021. (Doc. 125). The Order granting preliminary approval specified the means by which members of the proposed Settlement Class would receive notice. (*Id.*). And Class Counsel confirms that the proposed notice program has been implemented with some 96.53% of the 1,188,919 potential class members receiving the notice. (Doc. 127, #1191). Finally, as noted above, the Court held a fairness hearing on July 8, 2021. Thus, all that remains is for the Court to consider whether the proposed Settlement Agreement is fair, reasonable, and adequate.

Determining whether a proposed settlement satisfies these standards is more an art than a science. Courts have referred to the analysis as "an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (quoting *Officers for Justice v. Civil Service Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (quoting *City of Detroit v. Grinnell*, 495 F.2d 448, 468 (2d Cir. 1974))). Not surprisingly, then, the determination is committed to the sound discretion of the trial court. That said, case law has identified various factors that the trial court should consider in the exercise of that discretion. As Plaintiffs acknowledge, these include:

1.      Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

2.      The complexity, expense and likely duration of the litigation;

3.      The stage of the proceedings and the amount of discovery completed;

4.      The judgment of experienced trial counsel;

5.      The nature of the negotiations;

6.      The objections raised by the class members; and

7.      The public interest.

*Connectivity Sys.*, 2011 WL 292008, at *2 (citing cases). The Court will address each in turn.

### 1.      Likelihood of Success Balanced Against The Amount And Form of Relief Offered.

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (citing *Newman v. Stein*, 464 F.2d 689, 692 (2d. Cir. 1972)). From the outset of this case, and continuing through its settlement, Fifth Third has maintained that it did not improperly charge any of its customers ATM fees. Fifth Third maintains that the out-of-network ATM fees were authorized by the plain language of its Deposit Account Rules & Regulations, and that the practice of charging such fees was well known to its customers.

It appeared Fifth Third intended to vigorously litigate this matter, and Plaintiffs' success was by no means assured. According to Class Counsel, this was the first case litigated on this theory anywhere in the country. If, as Fifth Third maintains, the Account Rules provided the customers adequate warnings about the

fees, Plaintiffs presumably would have needed to show that such warnings were somehow insufficient, both as a matter of law and as a matter of fact, to put customers on notice as to those charges.

Moreover, in order to maintain this as a class action, the named Plaintiffs also would have needed to establish that whatever made the notice insufficient as to them, also applied to the class more broadly. Either, or both, of these hurdles may well have prevented the Plaintiffs from prevailing on behalf of the class in this case. Thus, there was risk in moving forward. And, even if Plaintiffs prevailed at trial, they would face the prospect of appeals to the Sixth Circuit.

Against that uncertainty, the Court is to balance the relief that the proposed Settlement Agreement provides. In doing so, "[t]he determination of what constitutes a 'reasonable' settlement is not susceptible of a mathematical equation yielding a particularized sum. Rather ... 'in any case, there is a range of reasonableness with respect to a settlement.'" *Connectivity Sys.*, 2011 WL 292008, at *3 (quoting *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y.1993) (quoting *Newman*, 464 F.2d at 693)). Moreover, "[t]he court need not decide the amount of a potential recovery at trial, since the approval of a settlement should not involve a trial on the merits." *Id.* (citing *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993) (citing *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983))).

Here, the settlement amount is significant, both in absolute terms and relative terms. As to the former, Fifth Third has agreed to establish a common fund in the

amount of $5,200,000, a significant sum. As to the latter, according to Class Counsel, this amount represents 33% of the "best-day damages" that the Plaintiffs could have recovered had the Court certified a nationwide class and had Plaintiffs prevailed at trial. (Doc. 127, #1186). In other words, according to Class Counsel, the maximum potential recovery would have been around $15 million, and the settlement awards about one-third of that amount.

Given the likelihood of success on the merits, coupled with potential obstacles to maintaining the matter as a class action, the amount and form of relief favors approval of the proposed Settlement Agreement.

### 2. The Complexity, Expense, and Likely Duration of the Litigation.

"In general, '[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *Id.* at *3 (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)))). Here, the parties have been litigating this matter for over three years. During that time, the parties have briefed two separate motions to dismiss. Yet, even at three years in, the parties had barely scratched the surface of how long the matter would likely take to arrive at full resolution through litigation.

Moreover, given the number of individual accounts, as well as the time period, at issue, discovery likely would have been complex and expensive. And Plaintiffs likely would have needed to retain, and pay, experts to parse through the voluminous discovery to understand who had been charged how much in out-of-network ATM

fees. Further, in addition to extensive data analysis, the case likely would have involved numerous depositions. In short, the parties were contemplating substantial litigation duration and expense if they could not negotiate an acceptable resolution. Thus, this factor counts in favor of approval.

### 3. The State of the Proceedings and the Discovery Completed.

"To insure that [n]amed [p]laintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed [s]ettlement [a]greement, the stage of the proceedings and the discovery taken must be considered." *Id.* at *4 (citing *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1015; *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000)).

Here, Class Counsel represent to the Court that they collected "significant factual information," including "in excess of tens of thousands of pages" of documents. (Doc. 127, #1201–02). While the litigation was still at the outset, the Court has no reason to believe that the Plaintiffs failed to undertake sufficient discovery to investigate the relative strengths and weaknesses of their claims.

### 4. The Judgment of Experience Trial Counsel.

"The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) (citing *Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 554 (6th Cir. 1982)), *rev'd on other grounds*, 467 U.S. 561 (1984)). Here, both Class Counsel and Defense Counsel are experienced practitioners in class actions. Counsel on both sides urge approval of the proposed Settlement Agreement, based on their

experience, as well as their knowledge of the strengths and weaknesses of the case. This factor thus cuts in favor of approval.

### 5. The Nature of the Negotiations.

The facts regarding settlement negotiations further suggest that approval is warranted. Settlement was achieved here only as the result of multiple mediation sessions with a skilled mediator who was experienced not only in class actions, but also in class actions involving the financial services industry. On the record here, there is little reason to believe that the settlement was the result of collusion between Class Counsel and Defendants to the detriment of the class.

### 6. The Objections Raised by the Class Members.

The response from class members further suggests that the proposed Settlement Agreement is in the class interest. Of roughly 1.1 million Settlement Class members who received notices, only 25 opted out. (Suppl. Br., Doc. 129, #1378). Moreover, only one putative class member objected. And that class member did not do so in a timely fashion. Further, the objection seemed to reflect an inaccurate understanding of the proposed Settlement Agreement. An additional putative class member appeared at the fairness hearing for the ostensible purpose of objecting. But it was clear from his arguments there that his objection did not go to the merits or fairness of the settlement. Rather, his principal concern was his desire to receive a service award in the same amount as the class representatives.

The Court overrules these objections. Accordingly, this factor cuts in favor of approval.

### 7. The Public Interest.

As a general matter, "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *12 (N.D. Ohio Sept. 1, 2011) (quoting 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002)). Here, the parties' settlement will avoid significant discovery and litigation costs, and will lead to a prompt and efficient resolution of this dispute, thereby freeing judicial resources for attention to other matters.

In sum, here all of the identified factors count in favor of approval of the proposed Settlement Agreement.

### B. Certification is Appropriate for Settlement Purposes.

In order to approve a class settlement, the Court also must find that class certification is appropriate, at least for settlement purposes. For the Court to arrive at that conclusion, Plaintiffs must establish each of the four requirements of Federal Rule of Civil Procedure 23(a), as well as at least one of the subsections of Rule 23(b). The Court starts with the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—before turning to Rule 23(b).

**Numerosity:** Numerosity requires a showing that the membership in the class is so numerous that joinder of all members is "impracticable." While there is no strict size threshold, under any account, the 1,188,919 members of the proposed class here easily meets the numerosity requirement.

**Commonality:**  Commonality requires the Plaintiffs to show that there are questions of law or fact that are common to the members of the proposed class. Moreover, those questions must be such that they are capable of resolution on a classwide basis. As a general matter, class certification is appropriate "if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

Here, all of the proposed class members are Fifth Third account holders. The terms that apply to ATM transaction fees for each of them are governed by the same account agreements. Thus, commonality is met.

**Typicality:**  Typicality requires that the class representatives' claims be typical of the other members of the class that they seek to represent. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Connectivity Sys.*, 2011 WL 292008, at *9 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1988)).

Here, the class representatives' claims are the same as those of the other members of the class. The question underlying their claims is whether the out-of-network ATM fees the class representatives paid were authorized or not. That is the same question that applies to the other class members, as well.

**Adequacy:**  The final element is adequacy. This element asks whether the representative parties will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining [this element]: 1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976) (citing *Gonzalez v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)).

Here, both components of the adequacy element are met. The first is satisfied for largely the same reasons as the typicality requirement is satisfied—the nature of the injury is the same for the class representatives as for the class members. Thus, their interests in prosecuting the claims are aligned. The second is satisfied because the record, and the terms of the proposed Settlement Agreement, reflect that the representatives have vigorously litigated this matter.

In short, Plaintiffs have established, at least for purposes of certification of a Settlement Class, that each of the four elements of Rule 23(a) are satisfied here.

In addition to the four requirements that Rule 23(a) imposes, the Plaintiffs must show that at least one subpart of Rule 23(b) is met. Here, Plaintiffs point to Rule 23(b)(3). This rule requires Plaintiffs to show that common questions of law or

fact predominate over individual questions (the "predominance requirement"), and a class action is superior to other methods for fair adjudication (the "superiority requirement"). Fed. R. Civ. P. 23(b)(3). "The matters pertinent to these findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Here, common questions predominate. The central question in this case is whether the ATM charges at issue were authorized or not. That issue is largely common to the class members, and the answer to that question will control the outcome of the case as to the claims of each of the other class members. Nor is there any reason to believe that individual class members would have a substantial interest in controlling the prosecution or defense of their individual actions. Thus, the predominance requirement is met.

In terms of superiority, the class members are geographically dispersed. Moreover, they have all suffered relatively small (alleged) harms, meaning it is unlikely that any of them would bring individual claims on their own. Nor do there appear to be any particular difficulties in managing this matter as a class action. Accordingly, the Court finds that the superiority requirement is met.

Based on the foregoing, the Court finds that class certification is warranted for settlement purposes.

14

**C.  Attorneys' Fees and Expenses, Service Awards for Named Plaintiffs, and Class Settlement Administration Fees.**

In addition to seeking class certification for settlement purposes and final approval of the proposed Settlement Agreement, Plaintiffs have also moved for approval of the attorneys' fee award, recovery of litigation expenses from the common fund, a $5,000 service award for each of the two class representatives, and approval of payment of the administrative costs from the common fund. (*See* Doc. 128). They have supported their request with documentation of hours that the various class counsel spent on this matter, along with the hourly rates of those class counsel. (See Doc. 127-2). They have also provided documentation of the various expenses that they incurred in connection with this matter. (*Id.*).

Class Counsel are entitled to a reasonable fee for their successful efforts on behalf of the class. To that end, "[t]he Court must ensure that class counsel are fairly compensated for the amount of work done and the results achieved." *Connectivity Sys.*, 2011 WL 292008, at *12 (citing *Rawlings v. Prudential–Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). The Court's function is to "determine what the lawyer would receive in the market and to compensate counsel at the fair market value." *Id.* (citing cases).

The two methods for doing so are referred to as the percentage of fund approach and the lodestar approach. And the Sixth Circuit has indicated that courts should make a "clear statement" as to which approach they are using. *See Gascho v. Global Fitness Holdings*, 822 F.3d 269, 279 (6th Cir. 2016).

Typically, when class "counsel's efforts create a substantial common fund for the benefit of the class, they are, therefore, entitled to payment from the fund based on a percentage of that fund." *Connectivity Sys.*, 2011 WL 292008, at *12 (citing *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001)); *see also Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 640 F. Supp. 697, 699–700 (S.D. Ohio 1986) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392–93 (1970). In other words, "[i]n the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys.*, 2011 WL 292008, at *13 (citing *In re Telectronics Pacing Sys., Inc.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999), *rev'd on other grounds*, 221 F.3d 870 (6th Cir. 2000)); *see also Kimber Baldwin Designs, LLC v. Silv Comm'ns, Inc.*, No. 1:16-cv-448, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (same). Consistent with that, the Court determines that here a percentage of fund approach, with a lodestar crosscheck, is the appropriate mechanism for establishing the fee.

But that still leaves the question of what constitutes a "reasonable percentage." The Sixth Circuit has adopted the following factors to consider in addressing that issue in common fund cases: (1) the value of the benefit rendered to the plaintiff class (i.e. the results achieved); (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill

and standing of counsel involved on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Based on such factors, as the court noted in *Connectivity Systems*, "[a]ttorneys' fees awards typically range from 20 to 50 percent of the common fund. 2011 WL 292008, at *12 (collecting cases). As for the lodestar-multiplier crosscheck on the fee award, "[m]ost courts agree that the typical lodestar multiplier" in a large class action "ranges from 1.3 to 4.5." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767–78 (S.D. Ohio 2007).

Here, the attorneys seek a fee award of thirty-three-and-one-third percent of the Settlement Fund (i.e., of the $5,200,000), or in other words, a fee of $1,733,333.00. This also reflects a multiplier of 1.366 on their claimed lodestar of $1,268,771.39. The requested fee percentage is in the middle of the "typical" range, and is reflective of contingency fee awards in most private matters. In terms of the factors identified above, the fee is necessarily directly tied to the value of the benefit rendered (it is a percentage), and the services were undertaken on a contingency fee basis, making the typical fee percentage in contingency fee cases at least relevant for consideration. While the litigation was not overly complex, Class Counsel maintains that the theory was novel, increasing the risk they faced at the outset of the litigation. And, based on the materials they submitted, Class Counsel appear to be experienced class action practitioners, who have successfully pursued other class litigation. In terms of the value of the services on an hourly basis, the lodestar multiplier here—1.366—accords with the typical lodestar cross check range. Thus, there is much to recommend the proposed fee award.

The Court, however, did have one concern, which the Court explored at the fairness hearing. The proposed Settlement Agreement provides that the fee percentage will apply to the entirety of the common fund, even though the common fund will also be used to fund administration expenses. As noted above, based on information provided at the hearing, it appears that those expenses will reach a capped amount of $615,000. The Court's concern is that awarding attorneys' fees based on the gross amount of the fund, rather than the amount remaining after such fees are paid, means that Class Counsel would have little financial incentive to minimize—or, indeed, even to monitor—such expenses.

When questioned about this topic, however, Class Counsel explained the steps they had taken to minimize the administration costs. For example, they obtained Fifth Third's agreement to assist in the necessary data gathering (thereby reducing the fees the outside administrator would charge). In addition, Class Counsel averred that they had obtained multiple bids for the administration services, and had selected the lowest one. Finally, Class Counsel opined that, based on substantial experience with class actions, the administration fees here were appropriate, or even lower than typical. Based on Class Counsel's representations, the Court concludes that the attorneys' fee percentage should be applied to the gross amount of the Settlement Fund, as requested. Moreover, as noted, the resulting lodestar multiplier is 1.366, which is well within the range of reasonableness.

In terms of expenses, Class Counsel requests $47,329,39. Class Counsel provided the Court a detailed breakdown of the categories in which these expenses

were incurred, and the law firm that incurred them. (Doc. 127-2, #1266). Only one of the expenses—the expert fees—raised any concerns. But the Court explored those concerns at the fairness hearing, and based on the representations made there has concluded that the expense was reasonable. As a result, the Court approves recovery of the requested expenses.

Separately, the proposed Settlement Agreement calls for a service award to each of the two class representatives of $5,000. Courts in this District have noted that "[s]ervice awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Bartell v. LTF Club Operations Co.*, No. 2:14-CV-401, 2020 WL 7062834, at *7 (S.D. Ohio Aug. 7, 2020) (quotation omitted). And they have likewise characterized a $5,000 service award as "reasonable." *See, e.g.*, *Croskey v. Hogan Servs.*, No. 2:20-CV-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) ("Representative Plaintiff will receive a $5,000 service award in addition to her individual payment. Both these payments are reasonable.").

Here, plaintiffs Carnell Smith and Lenox Magee reportedly assisted Class Counsel in prosecuting and settling this litigation. According to Class Counsel, at the inception of this action, both Mr. Smith and Ms. Magee indicated their desire and willingness to undertake the responsibilities and fiduciary duties on behalf of the class. Thus, the Court awards plaintiffs Carnell Smith and Lenox Magee, as Class Representatives, a Service Award of $5,000 each to be paid from the Settlement Fund.

Finally, the proposed Settlement Agreement provides that the administration fees shall be paid from the common fund. As the Court already observed, Class Counsel represented that those fees are capped at $615,000. Given the large number of account holders at issue (in excess of one million), as well as Class Counsels' description of the efforts undertaken to ensure that the administrative fees are reasonable, the Court concludes that the fee is appropriate.

Accordingly, based on the foregoing, the Court grants final approval to the proposed Settlement Agreement, and **ORDERS** as follows:

1.     The Court has jurisdiction over the subject matter of this Action under 28 U.S.C. § 1332. Accordingly, the Court has the authority to grant Final Approval of the Settlement Agreement, including all Exhibits to the Settlement Agreement. The Court also has personal jurisdiction over the Parties and the Settlement Class Members.

2.     This Order Granting Final Approval of Class Action Settlement ("Order") incorporates by reference the definitions in the Settlement Agreement filed in this action as Doc. 124-1, #1045–88, and all capitalized terms used in this Order that also appear in the Settlement Agreement shall have the meanings set forth in the Settlement Agreement.

3.     The Court grants Final Approval to the Settlement, as set forth in the Settlement Agreement. For the reasons more fully set forth above, the Court finds that the Settlement is fair, reasonable, and adequate, consistent with, and in compliance with, all applicable requirements of the Federal Rules of Civil Procedure,

the Class Action Fairness Act, the United States Constitution (including the Due Process Clause), and the Rules of the Court, and is in the best interests of each of the Parties and the Settlement Class Members.

4.      For settlement purposes, the Class satisfies all of the requirements of Federal Rule of Civil Procedure 23(a) (including the requirements of numerosity, commonality, typicality, and adequacy) and the requirements of Rule 23(b)(3).

5.      As evidenced by the Declaration of Andrew Perry, a Senior Project Manager at the Settlement Administrator, the Notice and other elements of the Notice Program were directed to the Settlement Class in accordance with the Court's February 9, 2021, preliminary approval order (Doc. 125) and the Settlement Agreement, and (1) constituted the best practicable notice under the circumstances; (2) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the terms of the proposed Settlement Agreement, the available relief, the release of claims, their right to object or exclude themselves from the proposed Settlement, and their right to appear at the Fairness Hearing; (3) were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) met all applicable requirements of the United States Constitution (including the Due Process Clause), the Class Action Fairness Act, the Federal Rules of Civil Procedure and the Rules of the Court.

6.      The Settlement Class Members include the members of the Class who did not opt-out of the settlement.

7. This Order uses the term "Excluded Class Members" to refer to the members of the Class who validly and timely excluded themselves from the Settlement, the names of whom are listed in Exhibit A to Andrew Perry's Supplemental Declaration (Doc. 129, Ex. 1).

8. Each and every Settlement Class Member is and shall be conclusively and forever bound by the Settlement Agreement. The Settlement Agreement shall be preclusive in all pending and future lawsuits or other proceedings. It shall be binding as to all the Released Claims.

9. The Court directs the Parties and their counsel to further implement and consummate this Settlement Agreement, the terms and provisions of which are incorporated by reference into this Order. No later than 45 days after the Effective Date, Settlement Class Member Payments shall be made from the Net Settlement Fund. The Settlement Administrator shall issue the Service Awards to the Class Representatives and the award of attorneys' fees and costs to Class Counsel pursuant to the terms of the Settlement Agreement. Settlement Administration Costs shall also be paid to the Settlement Administrator pursuant to the terms of the Settlement Agreement.

10. Any residual amounts shall be disposed of in the manner set forth in the Settlement Agreement, including by way of a cy pres award to Jump$tart Coalition for Personal Financial Literacy, as to residual amounts that cannot be distributed to class members in an economically viable fashion, if any.

11. The Releases in paragraphs 97-101 of the Settlement Agreement are incorporated into this Order and shall become effective on the Effective Date of the Settlement. Accordingly, each and every Settlement Class Member hereby compromises, settles, and releases each and every one of the Released Claims against the Released Parties.

12. Class Counsel and the Class Representatives adequately represented the best interests of the Class for purposes of negotiating, entering into, and implementing the Settlement.

13. This Action and the Released Claims (including all individual claims and Class-wide claims presented thereby) are hereby dismissed on the merits and with prejudice, without fees or costs to any Party except as provided in the Settlement Agreement and as adopted and ordered by the Court in this Order.

14. Without affecting the finality of this Order for purposes of appeal, the Court retains jurisdiction as to all matters relating to the administration, implementation, consummation, enforcement, and interpretation of this Settlement Agreement and this Order, and for any other necessary purpose.

15. There was one objection to the Settlement, which the Court overrules. To the extent the comments from the putative class member who attended the fairness hearing can be construed as an objection, the Court overrules that objection, as well.

16. The attorneys' fees and costs and Service Awards authorized and approved by this Order shall constitute full and final satisfaction of any and all claims that Class Representatives, any Settlement Class Member, and each of their

respective attorneys, may have or assert for reimbursement of fees and costs or Service Awards; and Class Representatives, Settlement Class Members and each of their respective attorneys shall not seek or demand payment of any additional fees and costs or payments to the Class Representatives. The Released Parties shall have no further responsibility for, and no liability whatsoever with respect to, any payment or disbursement of attorneys' fees and costs or payments to Class Representatives, nor with respect to any allocation of attorneys' fees and costs or payments to Class Representatives to any other person who entity who may assert any claim thereto.

17. This Order adjudicates all of the claims, rights and liabilities of the Parties to the Settlement, and is intended to be final and immediately appealable. There being no just cause for delay, the Clerk of the Court is hereby directed to enter final judgment pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED.**

August 31, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**